## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HOWARD M. BERRY )<br>4110 Jud Drive )<br>Cincinnati, OH 45236, )<br> )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>RYAN D. McCARTHY, )<br>in his official capacity as )<br>Acting Secretary of the Army )<br>101 Army Pentagon )<br>Washington, DC  20310, )<br> )<br>and )<br> )<br>JAMES MATTIS, )<br>in his official capacity as )<br>Secretary of Defense )<br>1400 Defense Pentagon )<br>Washington, DC 20301, )<br> )<br>    Defendants. )<br>_____ ) | Civil Action No. |

## COMPLAINT

Plaintiff Howard M. Berry ("Plaintiff") brings this action under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.*, for judicial review of a final agency decision denying his son, U.S. Army Sgt. Joshua A. Berry, the Purple Heart for injuries he sustained in the November 5, 2009 international terrorist attack at Fort Hood, Texas.  As grounds therefor, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1.  The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

2.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e).

## PARTIES

3.      Plaintiff is the father, next of kin, and heir of U.S. Army Sgt. Joshua A. Berry, deceased.  Plaintiff resides at 4110 Jud Drive, Cincinnati, Ohio 45236.

4.      Defendant McCarthy is the Acting Secretary of the Army.  Defendant McCarthy's principal place of business is 101 Army Pentagon, Washington, D.C. 20310.  Defendant McCarthy is sued in his official capacity only.

5.      Defendant Mattis is the U.S. Secretary of Defense.  Defendant Mattis' principal place of business is 1400 Defense Pentagon, Washington, D.C. 20301.  Defendant Mattis is sued in his official capacity only.

## STATEMENT OF FACTS

### a.      The November 5, 2009 Attack

6.      On November 5, 2009, U.S. Army Major Nidal Hasan ("Hasan") opened fire at Fort Hood, Texas, killing thirteen people and injuring more than 30 servicemembers and civilians.  Sgt. Berry was among the servicemembers injured in the attack.

7.      Sgt. Berry was assigned to Headquarters and Headquarters Battery, 1st Battalion, 6th Field Artillery, at Fort Hood.  He had deployed to Afghanistan for approximately a year in June 2008 and was at Fort Hood as part of a transition program following his return from deployment.  He was one of the last soldiers awaiting redeployment to Fort Knox at the time of the attack.

8.      Sgt. Berry was in a briefing room in Building 42004 when Hasan started shooting. Building 42004 is part of the Soldier Readiness Processing ("SRP") center and is next to Building 42003, where most of the shooting casualties occurred.

9.      The briefing room in Building 42004 had a set of metal double doors leading to the outside.  In witness statements given to the U.S. Army Criminal Investigative Command ("CID") and in a separate statement given to a Texas Ranger, Sgt. Berry estimated that Hasan fired 30-40 rounds outside Building 42004.  Sgt. Berry told those around him to get down on the floor and stay away from the doors and windows.  When Sgt. Berry heard gunshots hit the metal doors near him, he leaped over a desk to take cover and, in so doing, dislocated his left shoulder. He then heard Hasan trying to kick in the doors.  According to a witness statement from another individual, Hasan fired three rounds at the briefing room doors.

10.     Investigative photographs and sketches of the SRP center show the layout of buildings and the location of shell casings from the shots fired by Hasan.  The photographs and sketches show a number of shell casings around the metal doors of the briefing room where Sgt. Berry was located during the shooting.

11.     Following the attack, Sgt. Berry was admitted to the Carl R. Darnall Army Medical Center at Fort Hood on November 5, 2009, where his dislocated shoulder was surgically repaired.

12.     The attending physician who admitted Sgt. Berry found that Sgt. Berry's injury occurred during the mass shooting at the SRP center.

13.     Sgt. Berry's commander found the injury to have been incurred in the line of duty and documented that Sgt. Berry was a casualty of the mass shooting at the SRP center.

14.     On November 6, 2009, Sgt. Berry was entered into the U.S. Army casualty reporting system with a diagnosis of shoulder dislocation as a result of the mass shooting at the SRP center.

15.     A photograph of Sgt. Berry meeting with President Barack Obama at a November 10, 2009 memorial service at Fort Hood, included herewith as Exhibit A, shows Sgt. Berry's left arm in a sling.

16.     By memorandum dated December 7, 2009, the Fort Hood Installation Adjutant General confirmed that Sgt. Berry's shoulder dislocation occurred in the line of duty.

17.     CID, the Texas Rangers, and the Federal Bureau of Investigation conducted a joint investigation of the shooting and subsequently found probable cause to believe Hasan committed the offense of attempted murder when he fired at Sgt. Berry.

18.     On May 2, 2011, a Physical Evaluation Board found Sgt. Berry unfit for continued military service due to post-traumatic stress disorder, the shoulder injury received in the Fort Hood shooting, and degenerative arthritis of the spine.  It recommended a combined disability rating of 80%.

19.     On May 31, 2011, Sgt. Berry was released from active duty and placed on the temporary disability retired list.

20.     On February 13, 2013, Sgt. Berry committed suicide.  He was 36 years old.  Sgt. Berry is survived by Plaintiff and a now 7-year old daughter.

21.     At his August 2013 court martial, Hasan admitted to being influenced by Anwar Awlaki, chief propagandist for the al Qaeda in the Arabian Peninsula terrorist group.

### b.     Legal and Regulatory Background

22.     The U.S. Department of Defense Military Awards Program awards decorations and service awards to "ensure Servicemembers of the Armed Forces of the United States receive tangible recognition for acts of valor, exceptional service or achievement, and acts of heroism

not involving actual combat.  Processing and approval are awarded in the name of the Secretary of Defense."  Army Reg. 600-8-22, paragraph 2-1(b).

23.      The Purple Heart "differs from all other decorations in that an individual is not 'recommended' for the decoration; rather, he or she is entitled to it upon meeting specific criteria."  Army Reg. 600-8-22, paragraph 2-8(c).

24.      The U.S. Code provides that the Purple Heart "may only be awarded to a person who is a member of the armed forces at the time the person is killed or wounded under circumstances otherwise qualifying that person for award of the Purple Heart."  10 U.S.C. § 1131.  U.S. Army regulations establish the qualifications for awards of the Purple Heart and identify circumstances under which the Purple Heart is awarded.  *See*, *e.g.*, Army Reg. 600-8-22, paragraph 2-8(b).  Included among these circumstances is "an international terrorist attack against the United States . . . recognized as such by the [Secretary of the Army]."  *Id.* at paragraph 2-8(b)(6).

25.      U.S. Army regulations define a wound as "an injury to any part of the body from an outside force or agent … the wound must have required treatment, not merely examination, by a medical officer … [T]reatment of the wound will be documented in the Servicemember's medical and/or health record."  Army Reg. 600-8-22, paragraph 2-8(e).

26.      U.S. Army regulations emphasize that the requirement that a wound or injury be caused as a direct result of hostile action should not be interpreted so strictly as to preclude a deserving servicemember from being awarded the Purple Heart.  Army Reg. 600-8-22, paragraph 2-8(i).  "In a case such as an individual injured while making a parachute landing from an aircraft that had been brought down by enemy fire; or an individual injured as a result of a

vehicle accident caused by enemy fire, the decision will be made in favor of the individual and the award will be made.  *Id.* at paragraph 2-8(i)(1).

27.     Following the Fort Hood attack, the Secretary of Defense declined to recognize the mass shooting as an international terrorist attack against the United States.  Instead, the attack was characterized as "workplace violence."  As a result, active duty servicemembers injured in the attack were ineligible for the Purple Heart, among other awards and benefits.

28.     In response, Congress enacted legislation in 2014 mandating that servicemembers killed or wounded in an attack targeting members of the armed forces and carried out by an individual in communication with and inspired or motivated by a foreign terrorist organization be eligible for the Purple Heart.  10 U.S.C. § 1129a.  The legislation was enacted as part of the National Defense Authorization Act for Fiscal Year 2015.

29.     On February 6, 2015, the Secretary of the Army announced that the Fort Hood attack met the criteria for awards of the Purple Heart set forth in Title 10, Section 1129a.  In its review of the mass shooting, the Army found sufficient evidence to conclude Hasan "was in communication with the foreign terrorist organization before the attack," and that his radicalization and subsequent acts could be considered to have been "inspired or motivated by the foreign terrorist organization."

30.     In April 2015, the Army awarded the Purple Heart to 47 servicemembers injured in the Fort Hood attack.

### c.      Plaintiff's Application

31.     After the announcement that servicemembers injured in the Fort Hood attack were eligible to receive the Purple Heart, Plaintiff applied for the award for his son.

32.     On March 31, 2015, the U.S. Army Decorations Board considered and denied Plaintiff's application, finding that Sgt. Berry's injury was not the result of enemy action and that Sgt. Berry was not in direct contact with Hasan.  The denial was based in part on an erroneous email from a Fort Hood Judge Advocate, who opined that Hasan did not shoot at Building 42004.  The Judge Advocate acknowledged that he did not have access to all available information, however.  The U.S. Army Decorations Board informed Plaintiff he could apply to the Army Board for Correction of Military Records ("ABCMR") if he felt the decision was unjust or unfair.

33.     On December 6, 2015, Plaintiff applied to the ABCMR to correct the denial of his request.  Plaintiff included the following in support of his application:

- Statements made by Sgt. Berry to CID investigators and Texas Rangers;

- DA Form 199 (Physical Evaluation Board (PEB) Proceedings), dated 25 April 2011;

- DA Form 2173 (Statement of Medical Examination and Duty Status), dated 6 November 2009 by the attending physician and dated 30 November 2009 by his commander;

- Casualty Status Report, dated 6 November 2009, listing Sgt. Berry as a casualty with left shoulder dislocation;

- A letter, dated 23 February 2015, from the Adjutant General of the Army to a U.S. Senator concerning award of the Purple Heart to Sgt. Berry;

- A letter, dated 19 April 2015, from the Adjutant General of the Army to Mr. Berry concerning award of the Purple Heart to Sgt. Berry;

- Pictures of the building Sgt. Berry was in during the shooting, showing the location of shell casings from the gun fired by the shooter; and

- A copy of Sgt. Berry's death certificate.

34.    On April 17, 2016, a three-member panel of the ABCMR recommended by vote of two to one that "all Department of the Army records of the individual concerned be corrected by awarding [Sgt. Berry] the [Purple Heart] for the injury he incurred on 5 November 2009." The ABCMR panel found "[t]here is no question that [Sgt. Berry]'s injury met the basic medical criteria for award of the [Purple Heart]."  The ABCRM panel also found "[Sgt. Berry] was injured as a result of his own actions when he leaped over a desk for cover.  This injury can be attributed to enemy action only to the extent that [Sgt. Berry] would not have had to take cover had there not been an active shooter in the area."

35.    On October 28, 2016, Deputy Assistant Secretary of the Army (Review Boards) Francine C. Blackmon, acting pursuant to authority delegated by the Secretary of the Army, issued a memorandum rejecting the ABCRM panel's recommendation.  In the memorandum, Deputy Assistant Secretary Blackmon wrote:

> I have reviewed the findings, conclusions, and Board member recommendations. I find there is not sufficient evidence to grant relief.  Therefore, under the authority of Title 10, United States Code, section 1552, I have determined that the facts do not support a conclusion that [Sgt. Berry's] injury met the criteria for a Purple Heart.

The memorandum concluded, "BY ORDER OF THE SECRETARY OF THE ARMY," followed by Deputy Assistant Secretary Blackmon's signature.  Deputy Assistant Secretary Blackmon failed to provide any further explanation for the decision.

## COUNT 1
### (Administrative Procedure Act, 5 U.S.C. § 706)

36.     Plaintiff realleges paragraphs 1 through 35 as if fully stated herein.

37.     The October 28, 2016 decision by the Secretary of the Army is a final agency decision for purposes of APA review.

38.     The October 28, 2016 decision is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, as the injury Sgt. Berry sustained in the Fort Hood attack satisfied all criteria for being awarded the Purple Heart, including being sufficiently proximately caused by Hasan's gunfire.  The decision also is unsupported by substantial evidence.

39.     Plaintiff has been irreparably harmed by the unlawful decision and will continue to be irreparably harmed unless and until the decision is set aside and Defendants are enjoined from denying Sgt. Berry a Purple Heart.

40.     Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff respectfully requests that the Court: (1) declare the Secretary of the Army's October 28, 2016 decision to be arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law; (2) declare that the denial of Plaintiff's application was not supported by substantial evidence; (3) enjoin Defendants from continuing to deny Sgt. Berry a Purple Heart; (4) award Plaintiff attorneys' fees and other litigation costs reasonably incurred in this action; and (5) grant Plaintiff such other relief as the Court deems just and proper.

Dated:  October 12, 2017

Respectfully submitted,

*/s/ Lauren M. Burke*
Lauren M. Burke
D.C. Bar No. 1028811
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC 20024
(202) 646-5172

*Counsel for Plaintiff*

**Exhibit A**

