# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |  |
|---|---|
| **HOWARD M. BERRY**, <br><br> Plaintiff, <br><br> v. <br><br> **MARK ESPER**, **Secretary of the Army,**[1] *et al.*, <br><br> Defendants. | Case No. 17-cv-2112 (CRC) |

## MEMORANDUM OPINION

On November 5, 2009, Nidal Malik Hasan, an Army medical officer, went on a shooting spree at Fort Hood, a military post in Texas, killing 13 people and injuring 30 others. Former Army Staff Sergeant Joshua Berry was stationed at Fort Hood that day and, during the attack, was in a briefing room inside one of its buildings. Hasan at some point fired 30 to 40 rounds just outside that building. Berry told others in the room to get down on the floor. He then heard bullets strike the room's exterior metal doors, leapt over a desk to take cover and, in doing so, dislocated his shoulder.

Joshua's father believes that his son—who died in 2013—should have received a Purple Heart for his injury. Unlike other military decorations, which are awarded only upon the recommendation of a commander, the Purple Heart is given to any servicemember who meets certain regulatory criteria. Army Reg. 600-8-22, ¶ 2.8(*c*). The Army's regulations provide that a servicemember is entitled to the Purple Heart if he is wounded as the result of a terrorist attack

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Secretary Esper has been automatically substituted for Ryan D. McCarthy, who no longer serves as Secretary.

committed by a foreign terrorist organization. 10 U.S.C. § 1129a; Army Reg. 600-8-22, ¶ 2-8(*b*)(10).

Initially, the Army declined to award the Purple Heart to servicemembers injured or killed in the Fort Hood attack because, though Hasan admitted that he was inspired by Al-Qaeda in the Arabian Peninsula and was in contact with one of its senior recruiters, the terrorist group was not understood to be formally behind the attack. But Congress clarified in a 2015 statute that servicemembers injured during attacks inspired by foreign terrorist organizations and committed by individuals who were in communication with such organizations could qualify for the Purple Heart. 10 U.S.C. § 1129a(b); Army Reg. 600-8-22, ¶ 2-8(*b*)(10)(b). In turn, the Secretary of the Army determined that servicemembers injured or killed in the Fort Hood attacks were eligible for the Purple Heart if they met the other regulatory criteria. See Administrative Record ("A.R.") 78–79.

Shortly after that announcement, the plaintiff applied for his son to receive the award. The U.S. Army Decorations Board denied his application in March 2015 on the ground that the attack did not directly cause Berry's injury. A.R. 6. In doing so, it relied on an email from a Fort Hood staff attorney stating that—while he was not certain—he believed that Hasan had not shot at the building where Berry was located. Id.

The Decorations Board informed the plaintiff of its decision by letter and explained that he could apply to the Army Board for Correction of Military Records if he felt the decision was unjust. He did so. Along with his application for review, he filed witness statements his son had made to investigators and a statement from another individual indicating that Hasan had indeed shot at the building inside which Berry had been injured. A.R. 7–9.

2

By a 2-to-1 vote, the Corrections Board recommended that Berry receive a Purple Heart. A.R. 10. The Board found it clear that Berry's injury "met the basic medical criteria" for award of the Purple Heart—*i.e.*, that he suffered a qualifying "wound" during the attack. A.R. 9; see Army Reg. 600-8-22, ¶ 2.8(*e*). The real issue, in the Board's view, was "the degree to which the enemy (*i.e.*, the terrorist) caused his injury," A.R. 9—a necessary consideration under the Army regulations, Army Reg. 600-8-22, ¶ 2.8(*f*).

On this point, the Board began by citing the regulations' examples of injuries that would warrant a Purple Heart, including those incurred "while making a parachute landing from an aircraft that had been brought down by enemy fire" or "as a result of a vehicle accident caused by enemy fire." Id. ¶ 2-8(i)(1). The Board observed that Berry's injury was not obviously analogous: the examples "describe[d] circumstances under which the individual would not have control over his or her bod[y]," while Berry was injured as a result of his own decision to leap over the desk for cover. A.R. 9. And yet, the Board explained, Berry would not have made that decision but for the active shooter outside the building. Id. Though it did not expressly reconcile these competing points, the Board was evidently persuaded that the latter prevailed and established causation. It recommended that Berry be granted a Purple Heart. A.R. 10.

But a few months later, the Deputy Assistant Secretary of the Army—exercising the Secretary's authority to override the Correction Board's recommendations—found to the contrary. She registered her disagreement in a single paragraph of a one-page letter:

> I have reviewed the findings, conclusions, and Board member recommendations. I find there is not sufficient evidence to grant relief. Therefore, under the authority of [10 U.S.C. § 1552], I have determined that the facts do not support a conclusion that his injury met the criteria for a Purple Heart.

A.R. 2.

Berry's father challenges that denial under the Administrative Procedures Act ("APA"). He claims that the Deputy Assistant Secretary's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," and that it was "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E). The Court agrees that the decision violates the APA, and it will remand this matter to the Army for reconsideration.

Challenges to agency decisions under the APA are properly resolved on motions for summary judgment—which the parties have both filed here. Unlike with a typical summary judgment motion, however, the relevant question is not whether the record creates a material dispute of fact. Instead, the court's job is to review the decision in light of the record before the agency and to decide whether it complied with the APA.

To be sure, courts are "unusually deferential" toward military decisions regarding servicemembers' records, including those related to decoration. Kreis v. Sec'y of Air Force, 866 F.2d 1508, 1514 (D.C. Cir. 1989). But the summary denial here fails even that generous standard of review. It provides no meaningful analysis—only a boilerplate determination "that the facts do not support a conclusion that [Berry's] injury met the criteria for a Purple Heart." A.R. 2. Why not? Was there conflicting evidence regarding how immediate of a threat Hasan posed to Berry as he sat inside the building? Was the evidence clear but the Deputy Assistant Secretary thought that Berry could have taken cover without injuring himself? Or did she read the regulations as categorically taking the Purple Heart off the table for servicemembers injured while taking cover?

The denial letter provides no hints. In turn, the Court cannot meaningfully evaluate the reasoning behind it. That is enough to warrant remand. The deference accorded to military personnel decisions does not totally shield them from review. See, e.g., Saint-Fleur v. McHugh,

83 F. Supp. 3d 149, 157 (D.D.C. 2015). Rather, even a military personnel decision "is owed no deference if it fails to 'give a reason that a court can measure . . . against the arbitrary or capricious standard of the APA.'" Coburn v. McHugh, 679 F.3d 924, 929 (D.C. Cir. 2012) (quoting Kreis, 866 F.2d at 1514–15). Decisions that are "utterly unreviewable" must be vacated as arbitrary and capricious. Kreis, 866 F.2d at 1514.

That is the case here. In the face of an eight-page Board recommendation that provided a reasoned basis for awarding a Purple Heart, the Deputy Assistant Secretary summarily disagreed. The Court could not grant deference to that change of course if it tried.

Not to say that summary denials must always be set aside under the APA. If, for example, the Board had written a denial decision and the Deputy Secretary summarily *affirmed* it, the Court could fairly presume (even if not with certainty) that she was adopting the Board's reasoning. In that case, "the agency's path" might "reasonably be discerned." Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 27, 52 (1983). The Court would also be more inclined to uphold the denial if it were obviously supported by the record. It is not. Even if not clearly incorrect, the denial is at least on shaky ground. As the Corrections Board observed, injuries caused by taking cover are not precisely like the examples stated in the Army regulations. But neither are they much like the examples of injuries that do *not* suffice: for instance, those attributable to "[a]ccidents . . . not related to or caused by enemy action" or for "[s]elf inflicted wounds, except when in the heat of battle and not involving gross negligence." Army Reg. 600-8-22, ¶ 2.8(*h*)(8)–(9). The regulations also emphasize that "strict interpretation of the requirement for the wound or injury to be caused by direct result of hostile action" should not "preclude the award being made to deserving personnel." Id. ¶ 2.8(*i*).

At a minimum, Berry's case presents a more complicated issue of causation—whether an injury incurred while taking cover from gunfire outside a building was "caused" by the gunfire—than the Deputy Assistant Secretary's summary denial suggests.  The government's arguments that this issue was properly resolved against Berry are efforts to rationalize the Army's cursory denial.  The APA demands that the Army *itself*—acting through its officers—explain its resolution of the issue.  See Pierce v. SEC, 786 F.3d 1027, 1034 (D.C. Cir. 2015) ("A reviewing court may not supply a reasoned basis for an agency action that the agency itself did not give in the record under review.").

The Court is unwilling, however, to go the extra step of *ordering* that Berry be awarded a Purple Heart.  Rather, remand is proper.  Dickson v. Sec'y of Defense, 68 F.3d 1396, 1407 (D.C. Cir. 1995) ("Where an agency has failed . . . to explain the path it has taken, we have no choice but to remand for a reasoned explanation." (internal quotation omitted)).  On remand, the Army, assuming it wishes to stick with its determination, must explain why Berry is not entitled to a Purple Heart and do so with sufficient clarity that "a court can measure" the denial "against the 'arbitrary or capricious' standard of the APA."  Kreis, 866 F.2d at 1514–15.

The Court will thus grant the plaintiff's motion for summary judgment and deny the defendants' motion.  A separate order accompanies this memorandum opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date:  August 22, 2018