**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HOWARD M. BERRY ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.  17-2112 (CRC) |
| ) | |
| MARK T. ESPER, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**AMENDED COMPLAINT**

Plaintiff Howard M. Berry ("Plaintiff") brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, for judicial review of a final agency decision denying his son, U.S. Army Staff Sgt. Joshua A. Berry, the Purple Heart for injuries he sustained in the November 5, 2009 international terrorist attack at Fort Hood, Texas.  As grounds therefor, Plaintiff alleges as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e).

**PARTIES**

3. Plaintiff is the father, next of kin, and heir of U.S. Army Staff Sgt. Joshua A. Berry ("SSG Berry"), deceased.  Plaintiff resides at 4110 Jud Drive, Cincinnati, Ohio 45236.

4. Defendant Mark T. Esper ("Esper") is Secretary of the Army.  Defendant Esper's principal place of business is 101 Army Pentagon, Washington, D.C. 20310.  Defendant Esper is sued in his official capacity only.

5. Defendant Patrick M. Shanahan ("Shanahan") is Acting U.S. Secretary of Defense. Defendant Shanahan's principal place of business is 1400 Defense Pentagon, Washington, D.C. 20301. Defendant Shanahan is sued in his official capacity only.

## STATEMENT OF FACTS

### a. The November 5, 2009 Attack

6. On November 5, 2009, U.S. Army Major Nidal Hasan ("Hasan") opened fire at Fort Hood, Texas, killing 12 soldiers and causing gunshot injuries to 31 other service members. One civilian physician assistant was killed, and a civilian police sergeant suffered two gunshot wounds in the attack. SSG Berry was not shot but was injured diving for cover.

7. At the time of the attack, SSG Berry was assigned to "Headquarters and Headquarters Battery, 1st Battalion, 6th Field Artillery," at Fort Hood. He had returned from a year-long deployment to Afghanistan and was awaiting a change of station assignment to Fort Knox.

8. SSG Berry was in a windowed briefing room in Building 42004 when Hasan started shooting. Building 42004 is part of the Soldier Readiness Processing ("SRP") center and is next to Building 42003, where the shooting rampage began and where most of the casualties occurred. Building 42004 is separated from Building 42003 by approximately 30 feet. A grassy strip and pair of sidewalks runs between the two buildings.

9. After shooting and killing or wounding multiple service members in Building 42003, Hasan exited the building and attempted to enter Building 42004.

10. The briefing room in Building 42004 in which SSG Berry was located had a set of metal double doors leading to the outside. Hasan attempted to kick in the doors and fired several rounds. SSG Berry leaped over a desk to take cover and, in so doing, dislocated his left shoulder.

11. Investigative photographs submitted by Plaintiff and sketches of the SRP center show the layout of buildings and the location of shell casings from the shots fired by Hasan. The photographs and sketches show shell casings outside the briefing room doors.

12. Following the attack, SSG Berry was admitted to the Carl R. Darnall Army Medical Center at Fort Hood on November 5, 2009, where his dislocated shoulder was surgically repaired.

13. The attending physician who admitted SSG Berry found that Sgt. Berry's injury occurred during the mass shooting at the SRP center.

14. SSG Berry's commander found the injury to have been incurred in the line of duty and documented that SSG Berry was a casualty of the mass shooting at the SRP center.

15. On November 6, 2009, SSG Berry was entered into the U.S. Army casualty reporting system with the diagnosis of a shoulder dislocation as a result of the mass shooting at the SRP center.

16. A photograph of SSG Berry meeting with President Barack Obama at a November 10, 2009 memorial service at Fort Hood, included herewith as Exhibit A, shows SSG Berry's left arm in a sling.

17. By memorandum dated December 7, 2009, the Fort Hood Installation Adjutant General confirmed that SSG Berry's injury occurred in the line of duty.

18. The U.S. Army Criminal Investigative Command ("CID"), the Texas Rangers, and the Federal Bureau of Investigation conducted a joint investigation of the shooting and subsequently found probable cause to believe Hasan committed the offense of attempted murder when he fired at SSG Berry.

19. A Physical Evaluation Board subsequently found SSG Berry unfit for continued military service due to Post Traumatic Stress Disorder, the shoulder injury received in the Fort

Hood shooting, and degenerative arthritis of the spine. It recommended a combined disability rating of 80%.

20.     On May 31, 2011, SSG Berry was released from active duty and placed on the temporary disability retired list.

21.     On February 13, 2013, SSG Berry committed suicide. He was 36 years old. SSG Berry is survived by Plaintiff and a young daughter.

22.     At his August 2013 court martial, Hasan admitted to being influenced by Anwar Awlaki, chief propagandist for the al Qaeda in the Arabian Peninsula terrorist group.

### b.     Legal and Regulatory Background

23.     The U.S. Department of Defense Military Awards Program awards decorations and service awards to "ensure Servicemembers of the Armed Forces of the United States receive tangible recognition for acts of valor, exceptional service or achievement, and acts of heroism not involving actual combat. Processing and approval are awarded in the name of the Secretary of Defense." Army Reg. 600-8-22, ¶ 2-1(b).

24.     The Purple Heart "differs from all other decorations in that an individual is not 'recommended' for the decoration; rather, he or she is entitled to it upon meeting specific criteria." Army Reg. 600-8-22, ¶ 2-8(c).

25.     The U.S. Code provides that the Purple Heart "may only be awarded to a person who is a member of the armed forces at the time the person is killed or wounded under circumstances otherwise qualifying that person for award of the Purple Heart." 10 U.S.C. § 1131. U.S. Army regulations establish the qualifications for awards of the Purple Heart and identify circumstances under which the Purple Heart is awarded. *See*, *e.g.*, Army Reg. 600-8-22, ¶ 2-8(b).

Included among these circumstances is "an international terrorist attack against the United States . . . recognized as such by the [Secretary of the Army]." *Id.*, ¶ 2-8(b)(6).

26.     U.S. Army regulations define a wound as "an injury to any part of the body from an outside force or agent … the wound must have required treatment, not merely examination, by a medical officer … [T]reatment of the wound will be documented in the Servicemember's medical and/or health record." Army Reg. 600-8-22, ¶ 2-8(e).

27.     U.S. Army regulations emphasize that the requirement that a wound or injury be caused as a direct result of hostile action should not be interpreted so strictly as to preclude a deserving servicemember from being awarded the Purple Heart. Army Reg. 600-8-22, ¶ 2-8(i). "In a case such as an individual injured while making a parachute landing from an aircraft that had been brought down by enemy fire; or an individual injured as a result of a vehicle accident caused by enemy fire, the decision will be made in favor of the individual and the award will be made." *Id.*, ¶ 2-8(i)(1).

28.     Following the Fort Hood attack, the Secretary of Defense declined to recognize the mass shooting as an international terrorist attack against the United States. Instead, the attack was characterized as "workplace violence." As a result, active duty servicemembers injured in the attack were ineligible for the Purple Heart, among other awards and benefits.

29.     In response, Congress enacted legislation in 2014 mandating that servicemembers killed or wounded in an attack targeting members of the armed forces and carried out by an individual in communication with and inspired or motivated by a foreign terrorist organization be eligible for the Purple Heart. 10 U.S.C. § 1129a. The legislation was enacted as part of the National Defense Authorization Act for Fiscal Year 2015.

30.     On February 6, 2015, the Secretary of the Army announced that the Fort Hood attack met the criteria for awards of the Purple Heart set forth in Title 10, Section 1129a. In its review of the mass shooting, the Army found sufficient evidence to conclude Hasan "was in communication with the foreign terrorist organization before the attack," and that his radicalization and subsequent acts could be considered to have been "inspired or motivated by the foreign terrorist organization."

31.     In April 2015, the Army awarded the Purple Heart to 47 servicemembers injured in the Fort Hood attack.

### c.     Plaintiff's Application

32.     After the announcement that servicemembers injured in the Fort Hood attack were eligible to receive the Purple Heart, Plaintiff applied for the award for his son.

33.     On or about April 1, 2015, the U.S. Army Decorations Board met to consider Plaintiff's application. Administrative Record ("AR") at 75. The materials the board had before it included a witness statement from another service member in Building 42004 who reported that Hasan fired three rounds at the doors. AR at 55. The board also had a report from a medical evaluation of SSG Berry stating, "During the Fort Hood, TX terrorist attack on 5 November 2009, the Soldier locked a door and jumped behind a desk. Three shots were fired at him." AR at 59. The same evaluation also stated, "Soldier dislocated his left (non-dominant) shoulder diving for cover while being shot at during the Fort Hood attack on 5 November 2009. " *Id.* Another medical report, dated November 30, 2009, stated, "SGT Berry was the victim of a mass shooting at the Soldier Processing Center at Fort Hood, Texas on 5 November 2009."[1]  AR at 64. The materials

---

[1]     Berry was subsequently promoted to Staff Sergeant. Plaintiff uses "SSG" to denote his son's rank, unless quoting from documents that predate the promotion.

also included a Casualty Status Report, dated November 6, 2009, listing SSG Berry as a casualty of the shooting and identifying him as having suffered a left shoulder dislocation.  AR at 65-66.

34.     Also included in the materials before the decorations board was a January 23, 2015 email from a Judge Advocate General officer stating "SGT Berry:  Was not in Building 42003 but an adjacent building.  No ballistic evidence Hasan shot at the building.  He never entered the building."  AR at 50.  The statement about the lack of ballistic evidence was plainly incorrect (*see*, *e.g.*, AR at 43), and the officer acknowledged in his email that he did not have access to all available information.  AR at 50 ("I know there is more but I don't have full access to my drive at this time.").

35.     Curiously, on February 23, 2015, more than a month before the board met to consider Plaintiff's application, the Office of the Adjutant General sent a letter to U.S. Senator Rob Portman responding to a February 16, 2015 inquiry from the senator.  Although the board had not yet met, the letter represented that SSG Berry had been denied a Purple Heart:  "In the case of Sergeant Berry, official documentation shows that his injuries received on this day were not related to the attack or caused by the assailant.  Evidence shows that he was in a building adjacent to where the attack occurred and that the assailant did not enter or fire on the building he occupied.  As Sergeant Berry was not wounded as a direct result of the assailant's actions, the Purple Heart cannot be authorized under the provisions of the Act."  AR at 76.

36.     Plaintiff was informed of the decoration board's decision by letter dated April 19, 2015.  AR at 44-45.  The letter informed Plaintiff he could apply to the Army Board for Correction of Military Records ("ABCMR") if he felt the decision was unjust or unfair.  *Id.* at 44.  It advised him to submit a copy of the February 23, 2015 letter to Senator Portman with any application.  *Id.*

37. On December 6, 2015, Plaintiff applied to the ABCMR to correct the denial of his request. In addition to the medical records that were before the decorations board, Plaintiff submitted additional medical records that stated, "On 5 NOV, 2009, a Fort Hood Army psychiatrist killed 12 soldiers and injured 31 more in a terrorist attack. When he heard the gunfire, SGT Berry told a nurse to lock the door and get behind a desk. The terrorist first tried to break into the room and then fired 3 bullets through the door directly at the service member. SGT Berry managed to evade the bullets by leaping behind a desk, seriously injuring his shoulder in the process." AR at 16; *see also* AR at 12 and 59. Another medical record Plaintiff submitted to the ABCMR, but was not before the decorations board, noted that SSG Berry "was involved in a terrorist shooting incident during which he was shot at three times." AR at 21.

38. On April 17, 2016, the ABCMR recommended by vote of two to one that SSG Berry be awarded the Purple Heart. AR at 3-10. The ABCMR found no question that SSG Berry's injury met the basic medical criteria for the award. AR at 9. It also found that, although SSG Berry was injured leaping over a desk to take cover, his injury was attributed to enemy action because SSG Berry "would not have had to take cover had there not been an active shooter in the area." *Id.* By regulation, the ABCMR's decision was required to be supported by a preponderance of the evidence. 32 C.F.R. 581.3(e)(iv)(2).

39. The ABCMR's recommendation also expressly noted that the CID, the FBI, and the Texas Rangers conducted a joint investigation of the shooting and established probable cause that Hasan "committed the offense of attempted murder when he shot at [SSG Berry]." AR at 5. According to the recommendation, "Further investigation determined that [SSG Berry] sustained non-gunshot injuries while attempting to flee from the shooter's gunfire." *Id.*

40.     The recommendation also credited separate witness statements SSG Berry gave a CID investigator and a Texas Ranger.  AR at 5.  Neither the CID investigative report nor the witness statements were produced with the Administrative Record, however.  *See generally* AR Index.

41.     On October 28, 2016, Deputy Assistant Secretary of the Army (Review Boards) Francine C. Blackmon, acting pursuant to authority delegated by the Secretary of the Army, rejected the ABCMR's recommendation:

> I have reviewed the findings, conclusions, and Board member recommendations.  I find there is not sufficient evidence to grant relief.  Therefore, under the authority of Title 10, United States Code, section 1552, I have determined that the facts do not support a conclusion that [SSG Berry's] injury met the criteria for a Purple Heart.

Deputy Assistant Secretary Blackmon failed to provide any further explanation for her decision.  AR at 2.

42.     Plaintiff initiated this timely APA lawsuit on October 12, 2017.

43.     On August 22, 2018, the Court granted Plaintiff's Motion for Summary Judgment and ordered Defendants to "explain why Berry is not entitled to a Purple Heart and do so with sufficient clarity that 'a court can measure' the denial 'against the arbitrary or capricious standard of the APA.'"  Mem. Op., (Dkt. No. 15) at 6 (*quoting Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1514-15 (D.C. Cir. 1989)).

44.     On December 19, 2018, Deputy Assistant Secretary Blackmon issued a three-page letter to the Court purportedly explaining why SSG Berry was denied the award.  The letter noted that "the key issue to consider is the degree to which the enemy caused the injury."  A copy of the December 19, 2018 letter is included herewith as Exhibit B.

45.     According to the letter, the "applicable regulatory framework implies that the wound result from an affirmative offensive action initiated by an opposing military actor." Ex. B. at 2. The regulations "contemplate a force or energy initiated by the enemy or, more broadly, someone other than the injured Soldier himself." *Id.* They also excluded "injuries not directly caused by the enemy though the injuries might be severe and might have been sustained in a kinetic combat environment." *Id.* The letter also noted that the regulations exclude injuries like frostbite, trench foot, heat stroke, and battle fatigue. *Id.*

46.     The letter found that "the force or agent that separated SSG Berry's shoulder was the force he himself exerted in order to leap or dive to the floor to take cover" and "[a]lthough SSG Berry would not have dived to the to the floor but for the terrorist's attack, the greater weight of the evidence indicates SSG Berry's injury resulted from his effort to take cover in reaction to the gunfire." *Id.* "Consequently," the letter explained, "it is difficult to conclude that there existed a high degree of enemy causation or that the injury was inflicted by an outside force." *Id.* The letter also explained that the allowance for self-inflicted wounds sustained "in the heat of battle and not involving gross negligence" did not apply in SSG Berry's case because "self-inflicted would implies an accidental discharge of one's own weapon," and SSG Berry "had not yet entered the heat of battle." *Id.* at 2-3.

47.     The letter concluded by declaring there was "an insufficient causal connection between the injury and the terrorist's attack" and that "a preponderance of evidence in this case does not demonstrate an error or an injustice." Exhibit B at 3.

## COUNT I
### (Administrative Procedure Act, 5 U.S.C. § 706)

48.     Plaintiff realleges paragraphs 1 through 47 as if fully stated herein.

49. The October 28, 2016 denial and December 19, 2018 letter constitute a final agency decision for purposes of APA review.

50. The decision to deny SSG Berry a Purple Heart, as set forth in the original, cursory denial and further explained in the December 19, 2018 letter, is arbitrary, capricious, an abuse of discretion, not in accordance with law, and unsupported by substantial evidence. 5 U.S.C. §§ 706(2)(A) and (E). The evidence presented in the record amply demonstrated that the injury SSG Berry sustained in the Fort Hood attack satisfied all criteria for being awarded the Purple Heart, including being sufficiently caused by Hasan's gunfire.

51. The December 19, 2018 letter distorts the applicable legal standard by creating a requirement that an injury result from an affirmative offensive action, defined as a force or energy initiated by an opposing military actor. The U.S. Army regulation expressly requires commanders take into consideration the degree to which the enemy caused the injury. AR 600-8-22, ¶ 2-8(f). The regulation does not exclude injury-causing reactive actions, forces, or energy. The degree to which the enemy caused an injury is different from whether an injury is caused by an "affirmative offensive action." The regulation does not contain the phrase "affirmative offensive action." Failing to follow the U.S. Army regulation as written and instead applying a standard not found in the regulation is arbitrary, capricious, abuse of discretion, and not in accordance with law. 5 U.S.C. § 706(2)(A).

52. The letter also distorts the applicable legal standard by finding "it is difficult to conclude that there existed a high degree of enemy causation." The U.S. Army regulation does not require a "high degree of enemy causation." Again, failing to follow the U.S. Army regulation as written and instead applying a standard not found in the regulation is arbitrary, capricious, an abuse of discretion, and not in accordance with law. 5 U.S.C. § 706(2)(A).

53. The letter also disregarded the U.S. Army regulation's express statement that "[i]t is not intended that such a strict interpretation of the requirement for the wound or injury to be caused by direct result of hostile action be taken that it would preclude the award being made to deserving personnel." AR 600-8-22, ¶ 2-8(i). No effort was made to apply this admonition or analyze the two examples offered in the regulation as guidance on whether an injury is sufficiently causally related to hostile action. AR 600-8-22, ¶ 2-8(i). The regulation required comparing the facts surrounding SSG Berry's injury to the examples provided. Was SSG Berry's injury closer to "an individual injured while making a parachute landing from an aircraft that had been brought down by enemy fire" or an individual injured "driving or walking through an unauthorized area known to have been mined or placed off limits or searching for or picking up unexploded munitions as war souvenirs"? *Id.* The evidence in the record demonstrates that SSG Berry's injury was much closer to the former than the latter. It plainly was nothing like "frostbite," "trench foot," "heat stroke," or "battle fatigue" referenced in the December 19, 2018 letter. The letter found "SSG Berry would not have dived to the floor but for the terrorist's attacks." Exhibit B at 2. To contort the regulation to require a higher standard of causation is arbitrary, capricious, an abuse of discretion, not in accordance with law, and unsupported by substantial evidence. 5 U.S.C. §§ 706(2)(A) and (E).

54. The letter also misstates the known facts established in the record. The record clearly establishes that: (1) Hassan carried out a terrorist attack on November, 5, 2009 at Fort Hood; (2) Hassan's intent was to kill servicemembers; (3) Hassan fired three shots at SSG Berry; (4) SSG Berry was injured taking cover from Hassan's shots; (5) shell casings were found outside the building in which SSG Berry was located; and (6) SSG required medical treatment for his injury. Despite the substantial evidence in the record supporting these findings and the ABCMR's

additional finding that the CID, FBI, and Texas Rangers found probable cause that Hasan had attempted to kill SSG Berry, the December 19, 2018 letter erroneously concluded as a factual matter that SSG Berry's injury was merely a "reaction to gunfire outside the building and outside the office [SSG Berry] and others were occupying . . . [A] t the time he was injured, SSG Berry has not yet entered the heat of battle." Exhibit B at 2. The conclusion is arbitrary, capricious, an abuse of discretion, and unsupported by substantial evidence. 5 U.S.C. §§ 706(2)(A) and (E).

55.   The letter also overlooks the Court's pointed inquiries about the October 28, 2016 denial. The Court asked: "Was there conflicting evidence regarding how immediate of a threat Hasan posed to Berry as he sat inside the building? Was the evidence clear but the Deputy Assistant Secretary thought that Berry could have taken cover without injuring himself? Or did she read the regulations as categorically taking the Purple Heart off the table for servicemembers injured while taking cover?" Mem. Op., (Dkt. No. 15) at 4. The letter failed to explain why Hassan was not a threat to SSG Berry and all those in the room with SSG Berry. It also does not explain why SSG Berry "had not yet entered the heat of battle" when Hasan had shot and killed 13 people, including 12 soldiers, and wounded 32 others, 31 of whom were soldiers, and the CID, FBI, and Texas Rangers jointly found probable cause that Hasan had attempted to murder SSG Berry by shooting at him three times from the other side of the door. The letter also offers no legal support for the claim that the allowance for self-inflicted wounds sustained in the "heat of battle" is limited to accidental discharges of one's own weapon and no evidence that SSG Berry was grossly negligent when he took cover. It brushed aside whether the U.S. Army regulations categorically deny the Purple Heart to servicemembers who are injured while taking cover from enemy attack directed at them. Failure to answer the Court's inquiries is arbitrary, capricious, an abuse of

discretion, and not in accordance with law.  *See Butler v. Barnhart*, 353 F.3d 992, 1002 (D.C. Cir. 2004); *Poole v. Harvey*, 571 F. Supp. 2d 120, 126 (D.D.C. 2008).

56.     The letter also fails to address why the ABCMR's recommendation to grant the award was rejected.  It does not does not refute any of the ABCMR's factual findings or identify any evidence in the record that contradicted those findings.  It also does not explain why it rejected the ABCMR's causation analysis.  In fact, the letter does not even mention the ABCMR's recommendation.  The failure to explain the basis for rejecting the ABCMR's recommendation is arbitrary, capricious, an abuse of discretion, and not in accordance with law.  *Butler*, 535 F.3d at 1002.

57.     The letter also errs by reaching beyond the applicable U.S. Army regulations and invokes U.S. Navy regulations to bolster the denial.  SSG Berry was not a member of the U.S. Navy.  SSG Berry was not assigned to support a U.S. Navy unit, nor did the attack occur on a U.S. Navy installation.  The decision to award the Purple Heart to a member of the U.S. Army is governed by U.S. Army regulations only.  The failure to apply U.S. Army regulations properly and reliance on inapplicable U.S. Navy regulations are arbitrary, capricious, an abuse of discretion, and not in accordance with law.  5 U.S.C. § 706(2)(A).

58.     Plaintiff has been irreparably harmed by the unlawful decision and will continue to be irreparably harmed unless and until the decision is set aside and Defendants are enjoined from denying SSG Berry a Purple Heart.

59.     Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff respectfully requests that the Court: (1) declare the October 28, 2016 denial of Plaintiff's application, as explained by the December 19, 2018 letter to the Court, to be arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law;

(2) declare that the denial of Plaintiff's application was not supported by substantial evidence; (3) enjoin Defendants from continuing to deny SSG Berry a Purple Heart; (4) award Plaintiff attorneys' fees and other litigation costs reasonably incurred in this action; and (5) grant Plaintiff such other relief as the Court deems just and proper.

Dated:  February 25, 2019

Respectfully submitted,

*/s/ Paul J. Orfanedes*
PAUL J. ORFANEDES
D.C. Bar No. 429716
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC 20024
(202) 646-5172

*Counsel for Plaintiff*