## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HOWARD M. BERRY | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )          Civil Action No. 17-2112 (CRC) |
| | ) |
| MARK T. ESPER, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;
## REQUEST FOR ORAL HEARING

Plaintiff Howard M. Berry ("Plaintiff"), by counsel and pursuant to Rule 56 of the

Federal Rules of Civil Procedure, respectfully moves for summary judgment.  In support of this

motion, Plaintiff deferentially refers the Court to the accompanying memorandum of points and

authorities and statement of facts.  Plaintiff respectfully requests an oral hearing pursuant to

Local Civil Rule 7(f).

Dated:  April 26, 2019                         Respectfully submitted,

                                               */s/ Paul J. Orfanedes*
                                               PAUL J. ORFANEDES
                                               D.C. Bar No. 429716
                                               JUDICIAL WATCH, INC.
                                               425 Third Street SW, Suite 800
                                               Washington, DC 20024
                                               (202) 646-5172

                                               *Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| HOWARD M. BERRY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-2112 (CRC) |
| | ) | |
| MARK T. ESPER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Howard M. Berry ("Plaintiff"), by counsel and pursuant to Rule 56 of the

Federal Rules of Civil Procedure and Local Civil Rule 7(a) and (h), respectfully submits this

memorandum of points and authorities in support of his motion for summary judgment.

**I.     INTRODUCTION.**

On November 5, 2009, U.S. Army Major Nidal Hasan ("Hasan") carried out a terrorist

attack at Fort Hood, a U.S. military base in Killeen, Texas, killing 12 soldiers and injuring 31

other service members in a 10-minute shooting spree.  A civilian physician assistant also was

killed, and a civilian police sergeant suffered two gunshot wounds in the attack.   Staff Sargent

Joshua Berry ("SSG Berry" or "Berry") was among the injured.  Berry separated his shoulder

diving for cover when Hasan fired at least three bullets at him through a door.  The U.S. Army

Criminal Investigative Command ("CID"), Federal Bureau of Investigation ("FBI"), and Texas

Rangers found probable cause that Hasan attempted to murder Berry.  Despite this finding,

undisputed evidence in the Administrative Record to this effect, and a panel decision

recommending Berry be awarded the Purple Heart for his injury, Defendants have now twice

denied Berry the decoration.  The Court found the first denial deficient because it "provid[ed] no

hints" as to the basis for the decision.  It remanded the case to Defendants with the instruction

that they explain their decision in greater detail if they continued to deny Berry the Purple Heart.

The second denial is equally deficient, but for different reasons.  It ignores the uncontradicted

evidence and findings and the recommendation that Berry be awarded the Purple Heart, applies

erroneous legal standards, and fails to address key arguments.  It is arbitrary, capricious, an

abuse of discretion, not in accordance with law, and not supported by substantial evidence.

Berry's injury satisfied all the criteria for the decoration, including being sufficiently directly

caused by Hasan's gunfire.

## II.    FACTUAL AND PROCEDURAL BACKGROUND.

A full recitation of the factual and procedural background is set forth in Plaintiff's

Statement of Facts and will not be repeated here.  Instead, Plaintiff will focus on the most salient

facts in the Administrative Record and Defendants' 2018 decision denying Plaintiff relief for a

second time from a 2015 decision denying SSG Berry the Purple Heart.[1]

The Administrative Record contains scant information about the reasons Berry initially

was denied a Purple Heart.  The April 19, 2015 letter denying the decoration said only that

Berry's "injuries did not meet the regulatory criteria for awarding the Purple Heart."  AR at 44.

A letter to Plaintiff's U.S. Senator, the Hon. Rob Portman, provided additional information.

According to the letter, "Evidence shows that [Berry] was in a building adjacent to where the

attack occurred and that the assailant did not enter or fire at the building he occupied."  AR at 38-

39.

---

[1]     Defendants admit the 2016 and 2018 decisions are final agency decisions for purposes of
Administrative Procedure Act review.  Dkt. No. 24 (Answer and Affirmative Defenses), ¶ 49.

When Plaintiff petitioned the Army Board for the Correction of Military Records ("ABCMR") for relief from this 2015 denial, he submitted evidence demonstrating that Hasan not only fired at the building in which SSG Berry was located, but also fired at least three shots at Berry:

- "Three shots were fired at [Berry]"

- "[Berry] dislocated his left (non-dominant) shoulder diving for cover while being shot at during the Fort Hood attack on 5 November 2009;"

- "The terrorist first tried to break into the room and then fired 3 bullets through the door directly at [Berry];" and

- "[Berry] was involved in a terrorist shooting incident during which he was shot at three times."

AR at 12, 16, and 21.[2]  Plaintiff also submitted photographs showing shell casings outside the door.  *Id.* at 40-43.

In recommending the 2015 denial be reversed, the ABCMR credited witness statements SSG Berry gave to law enforcement investigators describing Hasan shooting at Berry's location and attempting to kick in the doors.  AR at 5 and 9.  It also credited a corroborating witness statement from another individual in the room and photographs and sketches of the location of shell casings.  *Id.* at 5-6 and 9; *see also id.* at 40-43, 52-53, and 55.

Even more compelling is the ABCMR's finding that law enforcement officials determined Hasan attempted to kill Berry.  According to the ABCMR:

> The U.S. Army Criminal Investigation Command (CID) investigation report of the 5 November 2009 shooting at Fort Hood shows CID, Texas Rangers, and the Federal Bureau of Investigation (FBI) conducted a joint investigation of the

---

[2]      Plaintiff's submission to the ABCMR appears at AR at 11-43.

shooting and established probable cause to believe that [Hasan] committed the offense of attempted murder when he shot at [Berry].

AR at 3; *see also id*. at 9 ("A jointly-conducted law enforcement investigation established probable cause to believe that the shooter committed the offense of attempted murder when he shot at [Berry]."). There is *no* evidence in the Administrative Record to the contrary.

Deputy Assistant Secretary Francine C. Blackmon ignored this compelling evidence when she rejected the ABCMR's recommendation to reverse the 2015 denial. Her cursory, three-sentence decision baldly asserts, "I have reviewed the findings, conclusions and Board Member recommendations. I find there is not sufficient evidence to grant relief. Therefore, under the authority of Tile 10, United States Code, section 1552, I have determined the facts do not support a conclusion that [Berry's] injury met the criteria for a Purple Heart." AR at 2.

Following this Court's remand, Deputy Assistant Secretary Blackmon issued a second decision again denying Plaintiff relief. Dkt. No. 23 (Amended Complaint), ¶ 44 & Ex. B; Dkt. No. 24 (Answer and Affirmative Defenses), ¶ 44.[3] The three-page decision contains a handful of what can only be described as cursory, if not incomplete findings of fact. It does not contain a single reference to the Administrative Record. The only statements that can be described as findings of fact are as follows:

- Berry "was injured when he leapt over a desk to take cover and, in so doing, dislocated his shoulder;"

- "The force or agent that separated SSG Berry's shoulder was the force he himself exerted in order to leap or dive to the floor to take cover;"

- Berry "would not have dived to the floor but for the terrorist's attack;"

---

[3]       A true and correct copy of the December 19, 2018 decision is attached as Exhibit 1 to Plaintiff's Statement of Facts.

- Berry's "injury resulted from his effort to take cover in reaction to the gunfire he heard emanating from outside the building and outside the office that he and others were occupying;" and

- Berry "had not yet entered the heat of battle."

*Id.* The decision does not address any of the evidence about Hasan shooting at Berry or the uncontradicted probable cause finding that Hasan attempted to kill Berry.

In addition to ignoring this key evidence, the decision relies on shifting, if not inconsistent and erroneous legal standards. It finds:

- "The applicable regulatory framework implies a requirement that the wound result from an affirmative offensive action initiated by an opposing military actor;"

- Examples of qualifying injuries "contemplate a force or energy initiated by the enemy or, more broadly, someone other than the injured Soldier himself;"

- "[T]he regulation excludes injuries not directly caused by the enemy even though the injuries might be severe and might have been sustained in a kinetic combat environment;" and

- "[T]he phrase 'self-inflicted wound' implies an accidental discharge of one's own weapon. In this regard, a separated shoulder from a tactical dive to the ground could not plausibly be deemed as 'self-inflicted' any

more than could a broken leg suffered during a tactical leap into a

foxhole."[4]

Dkt. No. 23 (Amended Complaint), ¶ 44 & Ex. B; Dkt. No. 24 (Answer and Affirmative

Defenses), ¶ 44.  It conflates, if not confuses the "wound" requirement with the causation

requirement and applies an erroneous causation test, finding "it is difficult to conclude that there

existed a high degree of enemy causation or that the injury was inflicted by an outside force."  *Id.*

It invokes U.S. Navy regulations not applicable to SSG Berry, who served in the Army, not the

Navy.  *Id.*  It also makes no effort to answer any of the pointed questions raised by the Court in

remanding the clearly insufficient 2016 decision or explain why the ABCMR's recommendation

that Plaintiff be granted relief from the 2015 denial was rejected.  *Id.*  It concluded, "I find that

SSG Berry's injury was not the result of an outside force or agent and that there is an insufficient

causal connection between the injury and the terrorist's attack . . . [A] preponderance of evidence

in this case does not demonstrate an error or injustice."  *Id.*

## III.   <u>ARGUMENT.</u>

### A.    <u>Standard of Review.</u>

The ABCMR reviews applications to correct military records to determine the "existence

of error or injustice."  32 C.F.R. § 581.3(b)(4)(i).  The applicant has the burden of proving an

error or injustice by a "preponderance of the evidence."  *Id.* at § 581.3(e)(2).  If persuaded that a

material error or injustice exists and sufficient evidence exists on the record, the ABCMR

"directs or recommends changes in military records to correct the error or injustice."  *Id.* at §

---

[4]      Why this would be the case is never explained.  Obviously, a broken leg suffered leaping
into a foxhole while being shelled or shot at would satisfy any requirement that a qualifying
wound result "from an affirmative offensive action initiated by an opposing military actor."  The
same wound suffered during a training exercise or lightning storm would not.

581.3(b)(4)(ii).  The ABCMR denies applications "when the alleged error or injustice is not adequately supported by the evidence, and when a hearing is not deemed proper."[5]  *Id.* at § 581.3(b)(4)(iv).  ABCMR decisions denying relief are reviewed under the Administrative Procedure Act ("APA").  *See, e.g., Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997); *Epstein v. Geren*, 539 F. Supp.2d 267  (D.D.C. 2008).

When reviewing an agency action under the APA, "the district court sits as an appellate tribunal.  The 'entire case' on review is a question of law."  *Foster v. Mabus*, 103 F. Supp.3d 95, 107 (D.D.C. 2015) (*quoting Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).  The court does not conduct new or separate fact-finding.  *Id.*  Rather, its review is "limited to the administrative record, since '[i]t is black-letter administrative law that in an [APA] case, a reviewing court should have before it neither more nor less information than did the agency when it made the decision.'"  *Foster*, 103 F. Supp.3d at 107 (*quoting CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014)).

In reviewing the administrative record, a court will set aside the agency's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *see also Haselwander v. McHugh*, 774 F.3d 990, 996 (D.C. Cir. 2014) (*quoting Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989)).  Agency action is arbitrary or capricious "if the agency relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to evidence before the agency, or is so implausible that it could not ascribe to a difference in view or the product of agency expertise."  *Epstein*, 539 F. Supp.2d

---

[5]        There is no indication in the Administrative Record that Defendants ever considered whether a hearing was proper.

at 274 (*quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43

(1983)).  "The arbitrary or capricious provision, under subsection 706(2)(A), 'is a catchall,

picking up administrative misconduct not covered by the other more specific paragraphs' of the

APA."  *Foster*, 103 F. Supp.3d at 108 (*quoting Ass'n of Data Processing Serv. Orgs., Inc. v. Bd.

of Governors of Fed. Reserve Sys. (ADPSO)*, 745 F.2d 677, 683 (D.C. Cir. 1984)).

      The court also reviews the agency's decision to determine whether it is supported by

"substantial evidence."  5 U.S.C. §706(2)(E).  The "substantial evidence standard requires the

court to review the record itself to determine whether it substantiates the story the agency would

have it tell."  *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004).  "Substantial evidence is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Id.* at 999 (internal quotations and citations omitted).  "The test requires more than a scintilla, but

can be satisfied by something less than a preponderance of the evidence."  *Id.*  Failing to address

all "non-frivolous arguments," merely reciting "boilerplate' language," and neglecting evidence

presented in the administrative record, do not satisfy the substantial evidence standard.  *Poole v.

Harvey*, 571 F. Supp.2d 120, 125 (D.D.C. 2008); *Haselwander*, 774 F.3d at 999; *Butler*, 353

F.3d at 1002.

      Defendants distort the applicable legal standards, disregard an express admonition on

causation, ignore substantial evidence in the Administrative Record, and neglect the Court's

pointed inquiries made in previously remanding this case to them, among other failures.  In short,

Defendants fail to satisfy the APA.

      **B.**      **Defendants Distort the Applicable Legal Standards.**

      The U.S. Code establishes criteria for awarding the Purple Heart to members of the

armed services generally.  *See, e.g.*, 10 U.S.C. §§ 1129, 1129a, and 1131.  U.S. Army regulations

establish the qualifications for awards to members of the U.S. Army.  *See* U.S. Army Reg. 600-8-22, ¶ 2-8.  For purposes of the Purple Heart, the U.S. Army regulations define a wound as "an injury to any part of the body from an outside force or agent under one or more of the conditions listed above."  U.S. Army Reg. 600-8-22, ¶ 2-8(e).  The regulations list several "enemy-related injuries which clearly justify award of the PH," as well as examples of "injuries and wounds which clearly do not justify the award of the PH."  *Id.* at ¶¶ 2-8(g) and (h).  Causation is treated separately.  *See id.* at ¶ 2-8(f).

The December 9, 2018 decision distorts the applicable legal standard by creating requirements not found in the Army regulations.  It also conflates, if not confuses the wound requirement with the causation requirement.   According to the decision, "[t]he applicable regulatory framework *implies* a requirement that the wound result from an affirmative offensive action initiated by an opposing military actor."  The regulation requires no such thing.  It does not contain the phrase "affirmative offensive action."[6]  A wound need only be an injury to the body "from an outside force or agent."  U.S. Army Reg. 600-8-22, ¶ 2-8(e).  SSG Berry's dislocated shoulder easily qualifies as a "wound" under the regulation.  The "outside force or agent" was the bullets Hasan fired at him.  Enemy bullets are referenced expressly in the regulation.  *Id.* at ¶ 2-8(g)(1).  A bullet fired by a terrorist at a servicemember plainly is a "force or energy initiated by the enemy," to use Deputy Assistant Secretary Blackmon's construction.  A terrorist's bullet cannot be compared to frostbite, trench foot, heat stroke, battle fatigue, or the other wounds referenced in the regulation.  *Id.* at ¶ 2-8(h).  Moreover, the regulation does not

---

[6]     Although not the standard, Hasan shooting at Berry three times during Hasan's terrorist rampage undeniably constitutes "affirmative offensive action initiated by an opposing military actor."  Deputy Assistant Secretary Blackmon could not have found otherwise.

exclude wounds "from" a reaction to an outside force or agent, such as diving to evade a bullet fired by a terrorist.

Second, the decision also distorts the applicable legal standard by requiring a "high degree of enemy causation."  Again, the regulation requires no such thing.   It merely requires commanders take into consideration *the degree to which the enemy caused the injury*.  U.S. Army Reg. 600-8-22, ¶ 2.8(f) (emphasis added).  It does not quantify the degree of causation required.  And again, Berry satisfies the regulation.  There is no doubt that the bullets Hasan fired at Berry caused Berry to dive for cover and dislocate his shoulder. [7]

The Army also is obligated to follow its own regulations, not those of other services. *Ortiz v. Sec. of Defense*, 41 F.3d 738, 741 (D.C. Cir. 1994); *see also Frizelle*, 111 F.3d at 177. Deputy Assistant Secretary Blackmon invoked Navy regulations to try to bolster her erroneous reading of the Army regulations.  SSG Berry was not in the Navy.  He was not assigned to support a Navy unit, nor did the attack occur at a Navy installation.  The failure to apply the Army regulations as written and instead applying standards not found in the regulation and relying on Navy regulations was arbitrary, capricious, an abuse of discretion, and contrary to law.  *See Kreis v. Sec'y of the Air Force*, 406 F.3d 684, 687 D.C. Cir. 2005); *see also Poole*, 571 F. Supp.2d at 126.

---

[7] Although again not the standard, it is bewildering that Deputy Assistant Secretary Blackmon could not find a "high degree of enemy causation" between the injury SSG Berry suffered diving for cover and being shot at by Hasan three times during the shooting rampage. She appears to suggest SSG Berry, a combat veteran who has returned from Afghanistan and obviously reacted as he was trained, needed to remain in the line of fire and be shot to meet her extra-regulatory standard.

## C.   Defendants Ignore the Express Admonition Against A Strict Interpretation of the Causal Requirement.

The Army regulation clearly states, "It is not intended that such a strict interpretation of the requirement for the wound or injury to be caused by direct result of hostile action be taken that it would preclude the award being made to deserving personnel."  U.S. Army Reg. 600-8-22, ¶ 2-8(i).  The regulation reinforces this admonition by offering two concrete examples of circumstances in which the injury or wound is not a direct result of, but sufficiently causally connected to enemy action:  an injury "while making a parachute landing from an aircraft brought down by enemy fire" and an injury resulting from "a vehicle accident caused by enemy fire."  *Id.*, ¶ 2-8(i)(1).  It even makes clear that self-inflicted wounds may qualify when suffered "in the heat of battle" and do not involve gross negligence.  *Id.*, ¶ 2-8(h)(9).  Obviously, a self-inflicted wound suffered in the heat of battle is unlikely to be "caused by a direct result" of enemy action.  Something less than "direct" causation satisfies the requirement.

Deputy Assistant Secretary Blackmon, who is Defendants' designee, completely ignores this admonition.  She does not apply or even mention it.  She also makes no effort to analyze the two examples offered in the regulations as guidance in determining whether an injury is sufficiently causally related to hostile action to qualify for the award.  In fact, the Deputy Assistant Secretary completely misconstrues the regulation when she asserts that it "excludes injuries not directly caused by the enemy even though the injuries might be severe and might have been sustained in a kinetic combat environment."  The regulations say no such thing.  She also is plainly wrong when she asserts that the allowance for self-inflicted wounds sustained in the heat of battle "implies an accidental discharge of one's own weapon."  She offers no basis whatsoever for such a conclusion.  There is none.  It also directly contradicts her assertions that a qualifying wound must result from "an affirmative offensive action initiated by an opposing

military action" and that there must be a "high degree of enemy causation."  All three of these assertions can not be true under a proper application of the regulations.

Any proper application of the regulation's causal requirement also would entail comparing the facts surrounding SSG Berry's injury to the examples provided.  Was SSG Berry's injury closer to "an individual injured while making a parachute landing from an aircraft that had been brought down by enemy fire" or an individual injured "driving or walking through an unauthorized area known to have been mined or placed off limits or searching for or picking up unexploded munitions as war souvenirs?"  U.S. Army Reg. 600-8-22, ¶ 2-8(i).  The evidence in the Administrative Record reveals that SSG Berry's injury was much closer to former than the latter.  It plainly was nothing like frostbite, trench foot, heat stroke, or battle fatigue referenced in the decision.  At a minimum, it was more akin to a self-inflicted wound suffered in the heat of battle.[8]  And the Deputy Assistant Secretary Blackmon found, "SSG Berry would not have dived to the floor *but for* the terrorist's attacks."  To contort the Army regulations to require a higher standard of causation is arbitrary, capricious, an abuse of discretion, and contrary to law.  *See Kreis*, 406 F.3d at 687; *see also Foo v. Tillerson*, 244 F. Supp.3d 17, 26 (D.D.C. 2017) (agency erred in requiring the plaintiff to meet an evidentiary standard higher than the standard required by regulation).

D.    **Defendants' Decision Is Not Based on Substantial Evidence**.

Deputy Assistant Secretary Blackmon was obligated to review and analyze all the relevant evidence in the record.  *Foster*, 103 F. Supp.3d at 109; *see also Ward v. Berryhill*, 246 F. Supp.3d 202, 208 (D.D.C. 2017).  The Administrative Record clearly establishes that: (1)

---

[8]    No claim has ever been made that SSG Berry was grossly negligent in evading Hasan's bullets.

Hasan carried out a terrorist attack at Fort Hood; (2) Hasan's intent was kill servicemembers; (3) Hasan fired three shots at SSG Berry and attempted to kill him, as demonstrated by the medical records in the Administrative Record, the witness statements and shell casings, and the probable cause determination by the CID, the FBI, and the Texas Rangers; (4) Berry dislocated his shoulder taking cover from Hasan's bullets; and (5) Berry required and received medical treatment for his injury.[9]  Defendants conceded all but the third point.  They avoid this third point only by ignoring the substantial evidence in the Administrative Record.  The finding that SSG Berry's injury was merely a "reaction to the gunfire he heard emanating from outside the building and outside the office that he and others were occupying" is a gross mischaracterization of the evidence.  It erroneously equates Berry with servicemembers in other buildings at Fort Hood who were injured in the crush to exit.  It ignores Berry's close proximity to Hasan and that Hasan directed his gunfire at Berry.  The same is true of the finding that Berry "had not yet entered the heat of battle" at the time he was injured.  It defies all logic and common sense to characterize being shot at by a terrorist in an attack that killed or injured 43 servicemembers and 2 civilians and having only a door separating you from the terrorist shooting at you as not being in "the heat of battle."  The findings are not supported by substantial evidence and are otherwise arbitrary and capricious.  *Foster*, 103 F. Supp.3d at 109 (an agency's refusal to consider evidence bearing on an issue or ignoring evidence contradicting its position is arbitrary and capricious).

---

[9]      This evidence easily satisfied Plaintiff's burden of proving by a preponderance of the evidence that the 2015 decision denying SSG Berry the Purple Heart because Hasan "did not enter or fire at the building" Berry occupied was an error or injustice.  *See* AR at 38-39.

E.    **Defendants Failed to Address the Court's Pointed Inquiries and the
      <u>ABCMR's Contrary Recommendation</u>.**

In denying Defendants' motion for summary judgment, the Court made several pointed

inquiries about Deputy Assistant Secretary Blackmon's October 28, 2018 administrative

decision.  These inquiries highlighted the absence of any proper analysis of the applicable Army

regulations and the evidence in the Administrative Record.  The Court asked:  "Was there

conflicting evidence regarding how immediate of a threat Hasan posed to Berry as he sat inside

the building?"  Dkt. No. 20 (Mem. Op.) at 4.  "Was the evidence clear but the Deputy Assistant

Secretary thought that Berry could have taken cover without injuring himself?"  *Id.*  "Or did she

read the regulations as categorically taking the Purple Heart off the table for servicemembers

injured while taking cover?"  *Id.*

The December 19, 2018 decision fails to address any of these inquiries.  It fails to explain

why Hasan was not an immediate threat to SSG Berry and all those in the room with Berry when

Hasan had already killed or injured scores of people and was firing at Berry and attempting to

kick in the doors.  The decision also fails to address whether Berry could have or should have

been able to take cover without injuring himself.  Again, Defendants have never claimed Berry

was negligent.  The decision also brushes aside whether the Army regulations categorically deny

the Purple Heart to servicemembers injured while taking cover from enemy attacks.

The Court also made a point of emphasizing the "eight-page Board recommendation that

provided a reasoned basis for awarding the Purple Heart."  Dkt. No. 20 (Mem. Op.) at 5.  The

decision does not explain why the ABCMR's recommendation that SSG Berry's military records

be corrected to award him the Purple Heart was rejected.  It fails to identify any evidence in the

record contradicting the ABCMR's findings.  In fact, the decision does not even mention the

ABCMR's recommendation.  The failure to respond to all non-frivolous and potentially

meritorious arguments is arbitrary and capricious and violates the APA. *Poole*, 571 F. Supp.3d at 125 (*quoting Frizelle*, 111 F.3d at 177).

     **F.**     **<u>The Court Should Undo Defendants' Action</u>.**

     Where the record belies an agency's conclusion, the court must undo the agency's action. *Foster*, 103 F. Supp.3d at 108 (*quoting County of Los Angeles v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999)); *Epstein*, 539 F. Supp.2d at 274 (same). Defendants have now had multiple opportunities to explain themselves and reach a lawful outcome. They failed to do so and, in particular, failed to articulate a credible reason for rejecting the ABCMR's recommendation that SSG Berry's military records be corrected. The evidence in the Administrative Record is compelling and belies any conclusion that the recommendation was wrong. Under the circumstances, the Court should vacate the December 18, 2018 decision and remand the matter again with an instruction that the ABCMR's recommendation be accepted.

     Doing so will not run afoul of the deference courts typically afforded to "traditional military personnel matters." *Hensley v. United States,* 292 F. Supp.3d 399, 408 (D.D.C. 2018). The D.C. Circuit employs two different applications of arbitrary and capricious review in military APA cases. In cases involving "traditional military personnel matters," it applies an "unusually deferential" standard. *Hensley*, 292 F. Supp.3d at 408. In military matters relating to "legal issues … [and] whether an agency has properly adhered to its procedures, courts have afforded no more deference than they do when reviewing the decision of civilian agencies." *Id*.; *see also Kreis*, 406 F.3d at 686. Determination of which standard applies turns on whether the decision is one that is "a 'military judgment requiring military expertise,' which warrants the use of the 'unusually deferential' standard …[or] … 'non-frivolous claims of plain legal error involving the Army's failure to comply with statutes, regulations, and mandatory procedures.'"

*Kreis*, 406 F.3d at 686; *see also Wilhelmus v. Geren,* 796 F. Supp.2d 157, 162 (D.D.C. 2011);

*Remmie v. Mabus*, 898 F. Supp.2d 108, 118-19 (D.D.C. 2012).

Unlike other decisions involving military personnel matters, whether to award the Purple Heart is simply a matter of following the regulations.  It does not require an exercise of discretion.  A Purple Heart applicant is "entitled to it upon meeting specific criteria."  U.S. Army Reg. 600-8-2, ¶ 2-8(c).  As such, Plaintiff's case does not present a question of military judgment requiring military expertise but, rather, presents a "non-frivolous claim of plain legal error" involving the Army's failure to comply with statutes, regulations, and mandatory procedures. No special expertise, and therefore no unusual defense, is required or warranted.

## IV.   <u>CONCLUSION.</u>

The evidence in the Administrative Record unambiguously demonstrates that Hasan shot at SSG Berry and attempted to kill him and Berry dislocated his shoulder diving to evade Hasan's bullets.  In fact, there is no probative evidence in the Administrative Record contradicting these conclusions.  If due consideration had been given to the evidence and the proper legal standards applied, Berry would have been awarded the Purple Heart.  Denying him the decoration was an error and an injustice that should have been corrected and deciding otherwise violated the APA.  Defendants should correct SSG Berry's military records to award him the Purple Heart.

Dated:  April 26, 2019

Respectfully submitted,

*/s/ Paul J. Orfanedes*
PAUL J. ORFANEDES
D.C. Bar No. 429716
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC 20024
Tel.:  (202) 646-5172
Email:  porfanedes@judicialwatch.org

*Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HOWARD M. BERRY                    )
                                   )
                    Plaintiff,     )
                                   )
v.                                 )          Civil Action No. 17-2112 (CRC)
                                   )
MARK T. ESPER, *et al.*,           )
                                   )
                    Defendants.    )
_____)

## PLAINTIFF'S STATEMENT OF FACTS

Plaintiff Howard M. Berry, by counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 7(h), respectfully submits this statement of facts in support of his motion for summary judgment:

1.      Plaintiff Howard M. Berry seeks a Purple Heart on behalf of his son, SSG Joshua A. Berry ("SSG Berry" or "Berry"), who is deceased.  Administrative Record ("AR") at 3 and 11.

2.      SSG Berry enlisted in the U.S. Army Reserves on March 29, 1995.  AR at 179.

3.      On November 5, 2009, U.S. Army Major Nidal Hasan ("Hasan") opened fire at Fort Hood, Texas, killing 12 soldiers and causing gunshot injuries to 31 other service members.  AR at 3-10 and 16.

4.      At the time of the attack, SSG Berry was assigned to "Headquarters and Headquarters Battery, 1st Battalion, 6th Field Artillery," at Fort Hood.  AR at 4.  He had recently returned from a year-long deployment to Afghanistan and was awaiting a change of station assignment to Fort Knox.  AR at 4, 16, and 84.

5.      SSG Berry was in a windowed briefing room in Building 42004 when Hasan started shooting.  AR at 40-43 and 58.

6.       Building 42004 is part of the Soldier Readiness Processing ("SRP") center and is next to Building 42003, where Hasan began shooting and where most of the casualties occurred. AR at 4 and 52.

7.      Building 42004 is separated from Building 42003 by approximately 30 feet.  A grassy strip and pair of sidewalks runs between the two buildings.  AR at 40-41 and 52-53.

8.      After shooting and killing or wounding multiple service members in Building 42003, Hasan exited the building and attempted to enter Building 42004.  AR at 16 and 52-53.

9.      The briefing room in Building 42004 in which SSG Berry was located had a set of metal double doors leading to the outside.  AR at 5 and 43.

10.      Hasan attempted to kick in the doors and fired multiple rounds.  AR at 4-5, 9, 16, and 55.

11.      SSG Berry leaped over a desk to take cover and, in so doing, dislocated his left shoulder.  AR at 3-4, 16, and 30.

12.      SSG Berry's medical records document that Hasan fired at least three shots at Berry.  AR at 12, 16, and 21.

13.      According to one record, a Physical Evaluation Board Proceedings report, "Three shots were fired at [Berry]."  AR at 12.  This same report also states, "[Berry] dislocated his left (non-dominant) shoulder diving for cover while being shot at during the Fort Hood attack on 5 November 2009."  *Id.*

14.      According to another record, a Psychiatric Medical Board Evaluation, "on 5 NOV 2009, a Fort Hood Army psychiatrist killed 12 soldiers and injured 31more in a terrorist attack."

- 2 -

AR at 16. "When he heard the gunfire, SGT Berry told a nurse to lock the door and get behind a desk." *Id.* "The terrorist first tried to break into the room and then filed 3 bullets through the door directly at the servicemember." *Id.* "SGT Berry managed to evade the bullets by leaping behind a desk, seriously injuring his shoulder in the process." *Id.* This same record also describes Berry as "a reliable historian." *Id.*

15.    According to a third record, a neuropsychological consultation report, "Upon returning stateside, [Berry] reported that he was engaged in mental health treatment at Ft. Hood for PTSD when he was involved in a terrorist shooting incident during which he was shot at three times." AR at 21.

16.    Investigative photographs and sketches show a number of shell casings around the metal doors of the briefing room where SSG Berry was located.  AR. at 40-43, and 52-53.

17.    Following the attack, SSG Berry was admitted to the Carl R. Darnall Army Medical Center at Fort Hood on November 5, 2009, where his dislocated shoulder was surgically repaired.   AR at 30.

18.    The attending physician who admitted SSG Berry found that Sgt. Berry's injury occurred during the mass shooting at the SRP center.  AR at 30.

19.    SSG Berry's commander found the injury to have been incurred in the line of duty and documented that SSG Berry was a casualty of the mass shooting at the SRP center.  AR at 64.

20.    On November 6, 2009, SSG Berry was entered into the U.S. Army casualty reporting system with a diagnosis of shoulder dislocation as a result of the mass shooting at the SRP center.  AR at 65-68.

21.     By memorandum dated December 7, 2009, the Fort Hood Installation Adjutant General confirmed that SSG Berry's injury occurred in the line of duty.  AR at 29.

22.     The U.S. Army Criminal Investigation Command ("CID"), the Texas Rangers, and FBI conducted a joint investigation of the shooting and found probable cause that Hasan "committed the offense of attempted murder when he shot at [Berry]."  AR at 5 and 9.

23.     On April 25, 2011, a Physical Evaluation Board found SSG Berry unfit for continued military service due to post-traumatic stress disorder, the shoulder injury received in the Fort Hood shooting, and degenerative arthritis of the spine.  AR at 12-14.  It recommended a combined disability rating of 80%.  AR at 13.

24.     On May 31, 2011, SSG Berry was released from active duty and placed on the temporary disability retired list.  AR at 89.

25.     On February 13, 2013, SSG Berry committed suicide.  AR at 82.

26.     As part of the National Defense Authorization Act for Fiscal Year 2015, Congress enacted legislation in 2014 mandating that servicemembers killed or wounded in an attack targeting members of the armed forces and carried out by an individual in communication with and inspired or motivated by a foreign terrorist organization be eligible for the Purple Heart.  AR at 78-81; *see also* 10 U.S.C. § 1129a.

27.     On February 6, 2015, the Secretary of the Army announced that the Fort Hood attack met the criteria for awards of the Purple Heart set forth in Title 10, Section 1129a.  AR at 78.

28.     Plaintiff applied for the Purple Heart to be awarded posthumously to his son but was notified in a letter from the Office of the Adjutant General dated April 19, 2015 that his application had been denied.  AR at 44-45.  The letter asserted that Berry's "injuries did not meet

the regulatory criteria for awarding the Purple Heart." *Id.* at 44.  The letter also advised Plaintiff

he could petition the Army Board for the Correction of Military Records ("ABCMR") for relief.

*Id.*

29.     Included with the April 19, 2015 letter was a February 23, 2015 letter from the

Office of the Adjutant General to Plaintiff's U.S. Senator, the Hon. Rob Portman, which further

explained:  "Evidence shows that [Berry] was in a building adjacent to where the attack occurred

and that the assailant did not enter or fire at the building he occupied."  AR at 38-39.  "As

Sergeant Berry was not wounded as a direct result of the assailant's actions, the Purple Heart

cannot be authorized under the provisions of the Act."[1]  *Id.*

30.     On December 6, 2015, Plaintiff applied to the ABCMR to correct the denial of his

application.  AR at 11-43.

31.     Included with the DD Form 149 Plaintiff submitted to the ABCMR were the

medical records documenting that Hasan shot at Berry three times.  AR at 12, 16, and 21.  Also

included was the April 19, 2015 letter to Plaintiff and the February 23, 2015 letter to Sen.

Portman.  *Id.* at 36-39.

32.     On April 17, 2016, the ABCMR recommended by vote of two to one that SSG

Berry be awarded the Purple Heart.  AR at 3-10.

33.     In issuing its recommendation, the ABCMR highlighted the fact that the CID,

FBI, and Texas Rangers found probable cause that Hasan "committed the offense of attempted

murder when he shot at [Berry]."  AR at 5 and 9.

---

[1]     It is unclear why the letter to Sen. Portman is dated February 23, 2015.  The letter appears
twice in the Administrative Record.  *See* AR at 38-39 and 76-77.

34.    On October 28, 2016, Deputy Assistant Secretary of the Army (Review Boards) Francine C. Blackmon, acting pursuant to authority delegated by the Secretary of the Army, rejected the ABCMR's recommendation without explanation.  AR at 2.  The denial merely stated, "I have reviewed the findings, conclusions and Board member recommendations."  *Id.*  "I find there is not sufficient evidence to grant relief."  "Therefore, under the Authority of Title 10, United States Code, section 1552, I have determined that the facts do not support a conclusion that [Berry's] injury met the criteria for a Purple Heart."  *Id.*

35.    On remand from this Court, Deputy Assistant Secretary Blackmon issued a three-page decision, dated December 19, 2018, purportedly further explaining her October 28, 2016 denial.  Dkt. No. 23 (Amended Complaint), ¶ 44 & Ex. B; Dkt. No. 24 (Answer and Affirmative Defenses), ¶ 44.  A true and correct copy of the December 19, 2018 is attached as Exhibit 1.

Dated:  April 26, 2019

Respectfully submitted,

*/s/ Paul J. Orfanedes*
PAUL J. ORFANEDES
D.C. Bar No. 429716
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC 20024
Tel:     (202) 646-5172
Email:  porfanedes@judicialwatch.org

*Counsel for Plaintiff*