# United States of America



## DEPARTMENT OF THE ARMY

Washington, DC — PLACE
21 October 2020 — DATE

I HEREBY CERTIFY that the attached constitute true and accurate copies of files pertaining to Joshua A. Berry, a retired member of the United States Army. Copies of records from the Army Review Boards Agency (ARBA) and Army Board for Correction of Military Records (ABCMR) are located in Arlington, Virginia. A copy of the ARBA records and copies of other documents are in the official temporary custody of the Military Personnel Litigation Branch, Litigation Division, Office of the Judge Advocate General of the Army.

DOYLE.JOHN.GALLO. — Digitally signed by DOYLE.JOHN.GALLO.06
Date: 2020.10.21 11:12:19 -04'00'

John G. Doyle
Lieutenant Colonel, U.S. Army
Chief, Military Personnel Litigation Branch

2nd Supplemental Administrative Record, Pages 000222-000226

I HEREBY CERTIFY that Lieutenant Colonel John G. Doyle, who signed the foregoing certificate, is the Chief, Military Personnel Litigation Branch, Litigation Division, Office of the Judge Advocate General of the Army, and that full faith and credit should be given to his certification.

IN TESTIMONY WHEREOF I, Kathleen S. Miller, The Administrative Assistant to the Secretary of the Army, have hereunto caused the seal of the Department of the Army to be affixed this **21st** day of **October**, **2020**

By EMANUEL.JACQUELIN E.LUCIA. — Digitally signed by EMANUEL.JACQUELINE.LUCIA.10
Date: 2020.10.21 17:18:10 -04'00'



*Administrative Assistant.*

**JACQUELINE L. EMANUEL**
**Colonel, U.S. Army**
**Chief, Litigation Division**

DA FORM 4, FEB 1998 — EDITION OF 1 MAR 66 IS OBSOLETE — APD PE v1.10

# 2ⁿᵈ SUPPLEMENTAL ADMINISTRATIVE RECORD INDEX
# JOSHUA A. BERRY

| TAB | DOCUMENT | DATE | PAGE |
|---|---|---|---|
| 16. | Letter from Deputy Assistant Secretary, Army Review Boards Agency to United States District Court for the District of Columbia, reference: AR20180011836, SSG Joshua Berry | May 12, 2020 | 000222-000226 |



**DEPARTMENT OF THE ARMY**
ARMY REVIEW BOARDS AGENCY
251 18TH STREET SOUTH, SUITE 301
ARLINGTON, VA  22202-3531

REPLY TO
ATTENTION OF

May 12, 2020

AR20180011836 SSG Joshua Berry

United States District Court
  for the District of Columbia
510 4th Street, NW, Third Floor
Washington, DC 20001

For the Honorable Court:

In accordance with an order from the U.S. District Court for the District of Columbia, dated February 20, 2020, I hereby provide for the Court my explanation of why I concur with my predecessor's decision regarding Mr. Howard Berry's application to the Army Board for Correction of Military Records (ABCMR) to have the Army award the Purple Heart to his son, Staff Sergeant (SSG) Joshua Berry.

During its February 20, 2020 hearing, the Court indicated that my predecessor had not fully explained her rationale relative to her finding that SSG Berry's injury did not qualify for the award and that she had not made factual findings relative to whether the assailant had shot at the building SSG Berry was occupying. This letter is intended to address the Court's concerns.

I have reviewed the transcript of the Court's February 20, 2020 hearing; my predecessor's December 19, 2018 decision letter to the Court; the case file; the applicable Army regulation; and the ABCMR's April 7, 2016 decision and recommendation. My decision is based upon these materials. My military experience includes my own Army career as a Soldier, which began as an enlisted Soldier and includes tours of duty as a company, battalion, and brigade commander.

Having reviewed these materials, I fully concur with my predecessor's decision and, with some exceptions, fully incorporate herein her reasons and rationale for that decision.

Turning to the Court's concerns, I note that the Court expressed its inability to discern my predecessor's analysis in the following manner:

There are photographs showing shell casings just outside the door. There's a witness statement from someone in Building 42004 with Berry indicating that Hasan fired three rounds, quote, at the door. There's the Army CID's conclusion that there was, quote, probable cause to believe that Hasan attempted to murder Berry. Such a finding would be consistent with trying to shoot through the door.

Printed on   Recycled Paper

000222

And there are Mr. Berry's or Sergeant Berry's medical records, albeit six months after the incident, reporting that he had been, quote-unquote, shot at.

…

But in any case, the deputy assistant secretary's ruling does not attempt to reconcile that competing evidence nor resolve either of the two possibilities; just hearing gunshots outside or someone actually shooting at the building, all right. And that's where I'm having trouble discerning the basis for her conclusion and where she was going with her analysis.

If she concluded that Hasan did, in fact, fire at the building, I can envision situations where that might constitute sufficient probable cause -- I'm sorry -- sufficient proximate cause or even possibly heat of the battle, again, whatever that means. So let's take a couple of hypotheticals, right?

If there's a 13-year-old, you know, protester who takes a BB gun and shoots at a fortified enclosed Army facility someplace, I don't think any of us would have trouble saying that that was not sufficient proximate cause and not likely being in the heat of the battle. Maybe you would disagree, but I think that would be a different story.

On the other hand, if you have an enemy with a tank or a howitzer outside of that same building and is firing at the building, and the building is under fire, even though no rounds penetrate the building, if a bunch of soldiers flee out of the back and one gets injured, perhaps -- and, again, I don't know; it's not for me to say in the first instance, but perhaps that might be sufficient probable cause or that might be heat of battle that would be an exception to the self-inflicted wound prohibition.

    With respect to the Court's question addressed to whether the assailant did or did not fire shots at the building SSG Berry was occupying, I find that the greater weight of the evidence indicates that the assailant did fire shots at the building; that some shots hit the building; and that SSG Berry apprehended that shots were fired at the building. I find that the greater weight of the evidence indicates the assailant did not enter the room SSG Berry was occupying or that any of the shots fired entered the room SSG Berry was occupying. Have made these findings, I still concur with my predecessor's decision and with her overall rationale. I find an inadequate connection between the assailant's assaultive actions and the actual injury suffered. I further find that SSG Berry's injury does not satisfy the requirements of the "heat of battle" self-inflicted wound exception.

When contemplating eligibility for the Purple Heart, a critical factor is the degree to which the enemy or hostile force caused the injury.[1] In this case, I find that the degree to which the assailant caused the injury is insufficient to establish eligibility for the award. The assailant at Fort Hood used a hand gun to perpetrate his attack. One would expect, therefore, that an injury proximately caused by this particular assailant would be a gunshot wound. Within the array of injuries proximately caused by this assailant I would also include wounds sustained from bullet fragments and material propelled by the fired bullets (e.g., glass, concrete, wood, or plaster fragments). But in this case, SSG Berry did not suffer a bullet or fragment wound. Instead, he suffered a shoulder separation that was not caused by a fired bullet or by one or more propelled fragments. The shoulder separation occurred when SSG Berry deliberately (and quite advisedly) dove to the floor after apprehending the assailant's actions near his building. The causal force of the injury was far more attributable to SSG Berry's decision to dive to the floor than it was to the assailant's gunfire.

One might assert that any injury connected to the assaultive actions of an enemy should qualify for the Purple Heart, including injuries resulting from evasive actions intended to avoid the enemy's assault. But Army and other DOD regulations specifically exclude injuries primarily attributable to a Soldier's own efforts to avoid enemy fire. For instance, the Army regulation excludes parachute jump injuries not caused by enemy action.[2] The Navy Purple Heart regulation excludes "[i]njuries sustained while seeking shelter, escaping, or evading."[3] The Marine Corps regulation provides that injuries "on the battlefield that are not caused either directly or indirectly by the effects of an enemy weapon do not meet … eligibility requirements for the [award] even if they occur during an engagement with the enemy (e.g., a vehicle moving to a new firing position overturns in a ditch or a Marine falls while running for cover from a sniper)."[4] These provisions from the other services' regulations are not controlling on my decision. They do, however, inform me that my finding that an inadequate nexus exists between SSG Berry's injury and the assailant's assaultive action is not anomalous relative to how the U.S. Armed Forces generally view and apply the Purple Heart criteria.

As previously mentioned, I also find that SSG Berry's injury does not satisfy the requirements of the "heat of battle" self-inflicted wound exception. The Army Purple Heart regulation specifically excludes "self-inflicted wounds" from consideration for the Purple Heart, but it does make an allowance if such wounds are sustained "in the heat of battle and not involving gross negligence."[5] I concur with my predecessor's

---

[1] Army Regulation (AR) 600-8-22, *Military Awards*, para. 2-8(f) (Dec. 11, 2006).
[2] *Id.* at para. 2-8(g)(10); *see also* AR 600-8-22, para. 2-8(g)(11) (Mar. 5, 2019).
[3] *See* All Navy (ALNAV) Message 079/11, SUBJECT: Department of the Navy Standards for Award of the Purple Heart, para. 3(d), (Dec. 9, 2011).
[4] MARADMIN 245/11, SUBJECT: Purple Heart Medal – Revised Criteria for Mild Traumatic Brain Injury and Updated Coordinating Instructions, para. 2(A) (Apr. 15, 2011).
[5] AR 600-8-22, para. 2-8(h)(8) (Dec. 11, 2006); *see also* AR 600-8-22, para. 2-8(g)(9) (Mar. 5, 2019).

assessment that the phrase "self-inflicted wound" connotes an accidental discharge of one's own weapon. I therefore find that SSG Berry's wound does not meet this criterion. I also find that SSG Berry had not entered the heat of battle, despite my earlier finding that the assailant fired shots at the building; that some shots hit the building; and that SSG Berry apprehended that shots were fired at the building. Sheltering in place behind concrete and metal walls and doors does not, in my estimation, constitute engagement in battle. To the extent there was a "battle" it was either completely one-sided in that the assailant was unilaterally firing his handgun, or it involved the assailant engaging in a firefight with civilian law enforcement outside the building. In my assessment, SSG Berry had not yet engaged in that battle at the relevant time. Instead, being unarmed, he did the smart thing, and probably what he was trained to do – temporarily seek cover and assist his teammates. Because I find that the circumstances of this case do not match two key criteria, I must conclude that the "heat of battle" self-inflicted wound exception is not applicable.

With regard to the Court's hypotheticals, my interpretation of the Purple Heart criteria would exclude both scenarios from favorable consideration. Whether the enemy assailant is a 13-year-old wielding a BB gun or an enemy combatant firing heavy ordnance, the key inquiry is, again, the degree to which the enemy or hostile force caused the injury. Assuming the Soldier in question injured himself diving to the ground to avoid both assaults, in neither case was the enemy assault the proximate cause of the injury for Purple Heart award purposes. On the other hand, if an enemy combatant shoots a BB gun and a BB projectile or a BB-propelled fragment causes an injury requiring medical attention, then the basic criteria are met. As discussed, the key factor is the causal connection between the enemy assaultive action and the injury.

My overall assessment of this case is guided by the criteria delineated in the Army regulation governing the Purple Heart award. One section of the regulation lists examples of "enemy related actions which justify eligibility" for the Purple Heart award.[6] Another section provides examples of injuries which do not justify eligibility for the award.[7] A commonsense comparison of these examples tends to place the facts of this case in the latter category, not the former. As previously alluded to, the regulation specifically excludes from Purple Heart consideration parachute jump injuries not caused by enemy action. Such non-qualifying airborne injuries presumably would include a leg-fracturing parachute landing during combat operations. Consequently, it is difficult to reconcile how a separated shoulder sustained during a tactical dive to the floor would qualify for the award, but a broken leg suffered resulting from an airborne combat operation would not. One can of course conjure any number of hypotheticals

---

[6] *See generally* AR 600-8-22, para. 2-8(g) (Dec. 11, 2006); *see also* AR 600-8-22, para. 2-8(f) (Mar. 5, 2019).

[7] *See generally* AR 600-8-22, para. 2-8(h) (Dec. 11, 2006); *see also* AR 600-8-22, para. 2-8(g) (Mar. 5, 2019).

5

designed to test the limits of the standards articulated in the regulation. It is my determination, however, that the injury in this case is more aligned with the examples provided in the non-qualifying category than in the qualifying category.

     In light of the foregoing, I regretfully must find that a preponderance of evidence in this case does not demonstrate an error or an injustice. I therefore deny the relief requested by Mr. Howard Berry on behalf of his son, SSG Joshua Berry.

*Alex Conyers*

Alexander Conyers
Deputy Assistant Secretary of the Army
    (Review Boards)