UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LYNN BROWN,

*Plaintiff*,

v.

CHRISTOPHER C. MILLER,[1] Acting
Secretary of Defense, *et al.*,

*Defendants*.

Civil Action No. 17-2112 (CRC)

**DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO PLAINTIFF'S
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ........................................................................................................................1

I.     Heightened Deference Is Appropriate in This Case ...........................................................2

II.    The DASA's Five-Page Decision Is Entitled to Heightened Deference .............................3

III.   Plaintiff's Invocation of Paragraph 2-8(i), Army Regulation 600-8-22, Is a Red
       Herring .................................................................................................................................6

IV.    The DASA's Heat of the Battle Analysis Is Sufficient ......................................................7

V.     The DASA Properly Applied the Relevant 2006 Army Regulation ...................................8

VI.    Plaintiff Asks for an Extraordinary Remedy that the Court Should Not Grant ................10

CONCLUSION ...........................................................................................................................12

---

[1]     Pursuant to Fed. R. Civ. P. 25(d), Christopher C. Miller, the Acting Secretary of Defense, is automatically substituted as a Defendant in this action.

## TABLE OF AUTHORITIES

<u>**CASES**</u>                                                                                      **Page**

*Aldrich v. SEC*,
   139 F.3d 221 (D.C. Cir. 1998)........................................................................ 11-12

*Baptist Med. Ctr. v. Burwell*,
   2019 U.S. Dist. LEXIS 31931, No. 11-cv-0899 (D.D.C. Feb. 28, 2019) ........................ 10-11

*Bowen v. Am. Hosp. Ass'n*,
   476 U.S. 610 (1986) .......................................................................................... 3-4

*Buggs v. Powell*,
   293 F. Supp. 2d 135 (D.D.C. 2003)....................................................................... 2-3

*Cone v. Caldera*,
   223 F.3d 789 (D.C. Cir. 2000) ...............................................................................12

*Escobedo v. Green*,
   602 F. Supp. 2d 244 (D.D.C. 2009).................................................................... 3, 12

*Ey v. McHugh*,
   21 F. Supp. 3d 49 (D.D.C. 2014) ............................................................................2

*FDIC v. Bender*,
   127 F.3d 58 (D.C. Cir. 1997) .................................................................................3

*Frizelle v. Slater*,
   111 F.3d 172 (D.C. Cir. 1997) ...............................................................................12

*Greyhound Corp. v. ICC*,
   668 F.2d 1354 (D.C. Cir. 1981) ......................................................................... 11-12

*Hensley v. United States*,
   292 F. Supp. 3d 399 (D.D.C. 2018) .........................................................................2

*Kreis v. Sec'y of Air Force*,
   866 F.2d 1508 (D.C. Cir. 1989) ..............................................................................2

*Maneely v. Donley*,
   967 F. Supp. 2d 393 (D.D.C. 2013)..........................................................................2

*Office of Communication of the United Church of Christ v. FCC*,

425 F.2d 543 (D.C. Cir. 1969) ..............................................................................11

*Remmie v. Mabus*,
   898 F. Supp. 2d 108 (D.D.C. 2012)......................................................................2

*Tennessee Gas Pipeline Co. v. F.E.R.C.*,
   926 F.2d 1206 (D.C. Cir. 1991) .................................................................. 10-11

## RULES

Fed. R. Civ. P. 56..................................................................................................1

## STATUTES

10 U.S.C. § 1552(a)(1)...........................................................................................2

## OTHER AUTHORITIES

Army Regulation 15-185, *Army Board for Correction of Military Records*
(Mar. 31, 2006) ....................................................................................................10

Army Regulation 600-8-22, *Military Awards* (Dec. 11, 2006) ...........................*passim*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LYNN BROWN,

*Plaintiff*,

v.

CHRISTOPHER C. MILLER,[1] Acting
Secretary of Defense, *et al.*,

*Defendants*.

Civil Action No. 17-2112 (CRC)

**DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO PLAINTIFF'S
<u>OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

By and through undersigned counsel, Defendants respectfully submit the following

consolidated opposition to Plaintiff's cross-motion for summary judgment and reply to Plaintiff's

opposition to Defendants' motion for summary judgment.  Pursuant to Federal Rule of Civil

Procedure ("Rule") 56, Defendant is entitled to summary judgment.

<u>**INTRODUCTION**</u>

For over two centuries, the United States Army has awarded the Purple Heart (previously

the Badge of Military Merit) to deserving Soldiers.  After 238 years, it unquestionably has the

discretion, judgment, and expertise to do so.  The Plaintiff asks this Court to do something

astounding—to award the Purple Heart to a Soldier despite two separate senior military decision-

makers (on three separate occasions) who have determined otherwise.  It would be an incredible

usurpation of the Army's authority.  The Court should decline the Plaintiff's invitation and

affirm the Deputy Assistant Secretary of the Army for Review Board's ("DASA") most recent

---

[1]     Pursuant to Fed. R. Civ. P. 25(d), Christopher C. Miller, the Acting Secretary of Defense, is automatically substituted as a Defendant in this action.

decision, which (again) found that Staff Sergeant ("SSG") Joshua Berry did not qualify for the Purple Heart.

## I.        Heightened Deference Is Appropriate in This Case.

"In this Circuit, decisions by boards for correction of military records are typically reviewed 'under an 'unusually deferential' application of the arbitrary or capricious standard.'" *Hensley v. United States*, 292 F. Supp. 3d 399, 408 (D.D.C. 2018) (quoting *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989)) (citing *Maneely v. Donley*, 967 F. Supp. 2d 393, 401 (D.D.C. 2013)).  "This particularly deferential standard stems from statutory language providing that the Secretary of each service branch 'may correct any military record . . . when the Secretary considers it necessary to correct an error or remove an injustice.'" *Id.* (quoting 10 U.S.C. § 1552(a)(1)).  The courts in this district have concluded that "courts are particularly unfit to review the substance of military personnel decisions."  *Id.* (quoting *Ey v. McHugh*, 21 F. Supp. 3d 49, 55 (D.D.C. 2014)).

As Defendants argued in their motion for summary judgment, *see* Defs.' Mot. Summ. J. (ECF No. 44) at 11-14, heightened deference is appropriate in this case.  The decision to award the Purple Heart—the Nation's oldest military award—is arguably the apex of a unique military matter that requires military judgment and expertise.  *See Remmie v. Mabus*, 898 F. Supp. 2d 108, 118-19 (D.D.C. 2012) (noting that "this Circuit differentiates between military judgment requiring military expertise, which warrants the use of the unusually deferential standard, and review of the Board's application of a procedural regulation governing its case adjudication process").  Plaintiff did not oppose this standard in their brief, and the Court should consider this crucial point conceded.  *See* Pl.'s Cross Mot. Summ. J. & Opp'n Defs.' Mot. Summ. J. (hereinafter "Pl.'s Mot.") (ECF Nos. 45, 46) at 1-15; *Buggs v. Powell*, 293 F. Supp. 2d 135, 141

(D.D.C. 2003) (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997)) ("It is understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

II.    <u>The DASA's Five-Page Decision Is Entitled to Heightened Deference</u>.

Despite Plaintiff's claim to the contrary, Army Regulation 600-8-22, *Military Awards* (Dec. 11, 2006), provides discretion to military decision-makers to determine whether a Soldier earned (or is entitled to) the Purple Heart. *See* Pl.'s Mot. at 6 ("The Army regulations governing the Purple Heart are straightforward and unambiguous."); Army Reg. 600-8-22, § 2-8(f) ("When contemplating an award of this decoration, the key issue that commanders must take into consideration is the degree to which the enemy caused the injury."); Pl.'s Ex. 1 (ECF No. 45-1).

Plaintiff argues that the DASA failed "to address record evidence demonstrating that Hasan shot at SSG Berry three times and that law enforcement officials found probable cause that Hasan attempted to kill SSG Berry." Pl.'s Mot. at 7. But, as Plaintiff acknowledges, the DASA found that then-Major Nidal Hasan ("Hasan") did shoot at SSG Berry—something upon which Plaintiff and Defendants agree. *Id.* Consequently, it is immaterial that the DASA's decision does not address "the law enforcement probable cause findings or the medical records showing that Hasan shot at SSG Berry." *Id.* at 8. The key issue—and the matter upon which the parties diverge—is whether Hasan caused SSG Berry's injury to the degree required for an award of the Purple Heart. The DASA, in his discretion, "considered relevant data and articulated an explanation establishing a 'rational connection between the facts found and the choice made,'" *see Escobedo v. Green*, 602 F. Supp. 2d 244, 248 (quoting *Bowen v. Am. Hosp.*

*Ass'n*, 476 U.S. 610, 626 (1986)), and therefore, his decision should be upheld.  Plaintiff simply disagrees with the DASA's determination, which is an insufficient basis to overturn his decision.

Plaintiff claims that "Defendants have failed to articulate what causation analysis the regulations require" and have failed to demonstrate "why an injury sustained taking evasive action in response to direct enemy gunfire cannot be proximately caused by gunfire."  Pl.'s Mot. at 8-9.  These assertions are baffling given the in depth analysis the DASA provided on these points.  Specifically, in two successive paragraphs, the DASA first analyzed "the degree to which the enemy or hostile force caused the injury," *see* AR 224, and then explained why "injuries primarily attributable to a Soldier's own efforts to avoid enemy fire" do not qualify for the award.  *Id.*  These are not "bald, conclusory" (*see* Pl.'s Mot. at 8) assertions, but rather the reasoned insight of a senior military decision-maker with experience that includes a career as a Soldier.  AR 222.

Similarly, Plaintiff's claim that the DASA's analysis is unmoored from the applicable regulation lacks merit.  *See* Pl.'s Mot. at 8 (arguing that the DASA's analysis "does not appear to have any relation to the causal requirement of the regulations").  The DASA cited to the relevant portion of the regulation in his analysis of causation, which provides that "[w]hen contemplating an award of this decoration, the key issue that commanders must take into consideration is the degree to which the enemy caused the injury."  Army Reg. 600-8-22, § 2-8(f); AR 224.  The regulation's use of the terms "consideration" and "degree" both impart discretion to the Army.

Plaintiff argues that Defendants are changing their analysis on causation, pointing to the arguments Defendants made in their prior summary-judgment motions (ECF Nos. 9, 29).  *See* Pl.'s Mot. at 9.  Those arguments, however, do not control here because the Court ruled in favor of Plaintiff in both instances, remanding the case to the Army.  *See* Mem. Op. (ECF No. 20) at 6;

Minute Order, dated February 20, 2020.  The Army has provided an updated decision since the Court most recently ruled, which explains the agency's reasoning on causation and responds to the Court's specific concerns.

Plaintiff asserts that Defendants are using a "'gun-type' injury formulation" for their proximate-cause analysis.  Pl.'s Mot. at 8-9.  Plaintiff is whitewashing the DASA's reasoning. The DASA's analysis focuses on the key requirement with respect to causation for the Purple Heart, which is "the degree to which the enemy or hostile force caused the injury."  AR 224.  He then applies the facts of SSG Berry's case to that standard; specifically, that "[t]he assailant at Fort Hood used a hand gun to perpetrate the attack."  *Id.*  Defendants have not "failed to articulate what causation analysis the regulations require," *see* Pl.'s Mot. at 9; the DASA has applied the facts of SSG Berry's case to the appropriate regulation and reached a supportable result.

Plaintiff wants the DASA (and this Court) to adopt its definition of proximate cause for an award of the Purple Heart.  *See id.* at 10 ("Moreover, whether that injury is a gunshot wound, a wound from bullet fragments or flying debris, or a dislocated shoulder diving for cover is immaterial to the injury's cause.").  The DASA, however, explained in a full paragraph why "[t]he causal force of [SSG Berry's] injury was far more attributable to [his] decision to dive to the floor than it was to the assailant's gunfire."  AR 224.  His detailed explanation is more than sufficient to explain why SSG Berry does not meet the causation requirement for an award of the Purple Heart.

Finally, Plaintiff argues that "Hasan plainly caused SSG Berry's injury in any *ordinary sense*."  Pl.'s Mot. at 9 (emphasis added).  However, "ordinary sense" does not control here; the award of a Purple Heart—and a commander's assessment of the degree to which an enemy

caused specific injuries—is a military matter that requires military judgment and expertise, guided by military regulations that impart discretion to the military decision-maker.  The DASA has explained his decision on why SSG Berry is not entitled to the Purple Heart in the Army under an Army regulation, which controls.

III.   **Plaintiff's Invocation of Paragraph 2-8(i), Army Regulation 600-8-22, Is a Red Herring.**

Paragraph 2-8(i), Army Regulation 600-8-22, in its entirety, provides that:

It is not intended that such a strict interpretation of the requirement for the wound or injury to be caused by direct result of hostile action be taken that it would preclude the award being made to deserving personnel.  Commanders must also take into consideration the circumstances surrounding an injury, even if it appears to meet the criteria.

Army Reg. 600-8-22, § 2-8(i).  This provision imparts discretion to military leaders to determine who is entitled to the Purple Heart.  Despite Plaintiff's claim that the DASA failed to address this provision, the entirety of his decision addresses the crux of this paragraph—that is, whether the circumstances surrounding SSG Berry's injury qualifies for the award.  *See* Pl.'s Mot. at 10 ("Defendants fail to address Plaintiff's repeated invocation of Army Reg. § 2-8(i), which cautions against a strict interpretation of the direct injury requirement."); AR 222-26.  Plaintiff disagrees with the DASA's interpretation and points to this provision as evidence that he should reach another conclusion—namely, that SSG Berry is entitled to the Purple Heart.

The point of this paragraph is to provide military leaders with discretion to determine who deserves the award.  Indeed, the provision contains opposite scenarios.  It encourages commanders not only to consider the award for "deserving personnel" who do not appear to qualify for it based on a "strict interpretation" but also not to award it even if the circumstances "appear to meet the criteria."  *See* Army Reg. 600-8-22, § 2-8(i).  The key being that the military decision-maker must, as he did here, "take into consideration the circumstances surrounding an

6

injury[.]" *Id.*  Plaintiff advances arguments based on a preferred portion of the regulatory provision but ignores the portion that provides the Army with discretion.  Either way, the DASA's detailed decision reflects exactly what is required by § 2-8(i), which is that he consider the circumstances surrounding SSG Berry's injury to determine whether he qualifies for the award.

Plaintiff argues that the DASA's failure to cite specifically to § 2-8(i) "demonstrates that the DASA's denial is arbitrary."  Pl.'s Mot. at 10 n.5.  The DASA, however, notes that the "overall assessment of this case is guided by the criteria delineated in the Army regulation governing the Purple Heart award."  AR 225.  The law does not require him to cite to every single provision in the regulation in order to support his analysis.  To argue otherwise lacks merit, and the heightened deference established by this circuit shields the services from this type of argument.

## IV.    <u>The DASA's Heat of the Battle Analysis Is Sufficient.</u>

The DASA's determinations that "self-inflicted wound" means an accidental discharge of one's own weapon and that SSG Berry had not entered the "heat of battle" are entitled to deference from this Court.  AR 225.  His conclusions are reasonable ones based on the regulation and his interpretation of the relevant regulatory language.  AR 225-26.  Contrary to Plaintiff's claim, the DASA's finding that SSG Berry was "sheltering in place" is supported by the administrative record.  As the DASA explains, "[s]heltering in place behind concrete and metal walls and doors does not, in my estimation, constitute engagement in battle."  AR 225.  Plaintiff disagrees, but that is not enough to vacate the Army's decision under the law.

Plaintiff questions the DASA's use of "commonsense" when comparing the injuries listed in the pertinent regulation.  Pl.'s Mot. at 11-12.  She argues that "SSG Berry's injury was

nothing like frost bite, trench foot, heat stroke, and the other injuries unrelated to any enemy

action listed in § 2-8(h), but was far more like the injuries listed in § 2-8(g) arising from enemy

action." Pl.'s Mot. at 11.  Plaintiff leaves out the relevant provision in § 2-8(h)(8) that was the

focus of the DASA's analysis—"[s]elf inflicted wounds, except when in the heat of battle and

not involving gross negligence." *See* Army Reg. 600-8-22, § 2-8(h)(8).  The DASA adequately

explained his rationale on this point, finding that "it is difficult to reconcile how a separated

shoulder sustained during a tactical dive to the floor would qualify for the award, but a broken

leg suffered resulting from an airborne combat operation would not." AR 225.

    Defendants agree with Plaintiff that "[i]t is the facts and circumstances that matter." *See*

Pl.'s Mot. at 12.  Plaintiff poses a hypothetical in its brief in an attempt to discredit the DASA's

analysis. *See* Pl.'s Mot. at 12 ("Would it make a difference if Hasan had swung at SSG Berry

with a knife instead of shooting at him[.]").  The DASA addressed this general point:  "One can

of course conjure any number of hypotheticals designed to test the limits of the standards

articulated in the regulation.  It is my determination, however, that the injury in this case is more

aligned with the examples provided in the non-qualifying category than in the qualifying

category." AR 225-26.  Ultimately, the DASA applied the facts and circumstances to SSG

Berry's case and reached a conclusion that is entitled to deference.

## V.    The DASA Properly Applied the Relevant 2006 Army Regulation.

    As a threshold matter, Plaintiff and Defendant agree that the 2006 Army regulation

controls the DASA's analysis in this case. *See* Pl.'s Mot. at 12 n.6.  Plaintiff spends considerable

effort attacking the DASA's statement that "Army and other DOD regulations specifically

exclude injuries primarily attributable to a Soldier's own efforts to avoid enemy fire." AR 224.

However, as both Plaintiff and the DASA acknowledge, the latter's discussion of other

regulations did not control his decision here.  *Compare* Pl.'s Mot. at 12 ("Certainly, as the Court pointed out at the February 20, 2020 hearing, the DASA can cite other services' regulations as non-binding authorities."), *with* AR 224 ("These provisions from the other services' regulations *are not controlling* on my decision.  They do, however, inform me that my finding that an inadequate nexus exists between SSG Berry's injury and the assailant's assaultive action is not anomalous relative to how the U.S. Armed Forces generally view and apply the Purple Heart criteria.") (emphasis added).

Plaintiff's brief provides a lengthy harangue of the DASA's citation to other services' non-controlling regulations, which he, in fact, acknowledged did not control his decision.  *See* Pl.'s Mot. at 12-14.  She accuses the DASA of cherry-picking "two inapplicable, untimely regulations from the Navy and Marine Corps."  Pl.'s Mot. at 14.  First, the evolution in the Marine Corps' and Navy's regulations and their respective treatment of "evasive injuries" is a worthwhile comparison to make (even if the regulations were not in effect at the time of SSG Berry's injury) in order to give context to his decision.  Second, the fact that the Navy's regulation evolved is of little consequence.  Although the Navy cancelled All Navy Message 079/11, it is important to note that "evasive injuries" were not then included as automatically qualifying in the Secretary of Navy's August 16, 2019, message.  *See* Pl.'s Ex. 5 (ECF No. 45-1) at 21; Pl.'s Ex. 6 (ECF No. 45-1) at 23-26.  Plaintiff highlights injuries "caused by a vehicle or aircraft crash resulting from enemy fire" in the 2019 Navy message as some type of coup de grâce.  *See* Pl.'s Ex. 6 at 24.  Of course, neither of those circumstances are applicable to SSG Berry's case nor bear out that evasive injuries should or do automatically qualify for the Purple Heart.  Regardless, those regulations were not in effect at the time of SSG Berry's injury and served only to provide context to the DASA's decision.

The 2006 Army regulation excludes "[j]ump injuries not caused by enemy action" from consideration for the Purple Heart.  *See* Army Reg. 600-8-22, § 2-8(h)(10).  Plaintiff is correct that the regulation permits the award of the Purple Heart for jump injuries sustained "while making a parachute landing from an aircraft that had been brought down by enemy fire."  *Id.*, ¶ 2-8(i)(1).  As a threshold matter, an airborne Soldier jumping from an airplane that is crashing as a result of enemy action is not analogous to SSG Berry's situation.  Regardless, the DASA's point in noting the jump-injury exclusion is that not all injuries connected to the assaultive actions of an enemy should qualify for the Purple Heart.  AR 224 ("One might assert that any injury connected to the assaultive actions of an enemy should qualify for the Purple Heart, including injuries resulting from evasive actions intended to avoid the enemy's assault.").  That conclusion is owed deference from this Court.  And, assuming *arguendo* that all evasive injuries are not excluded from consideration of the Purple Heart, it would not then be the case that SSG Berry's injury *ipso facto* qualifies him for the award under the facts and circumstances here.

**VI.**      **Plaintiff Asks for an Extraordinary Remedy that the Court Should Not Grant.**

Plaintiff asks this Court "'to trigger the once-in-a-decade' remedy of a Court directing the agency on how to solve a particular problem."  *See Baptist Med. Ctr. v. Burwell*, 2019 U.S. Dist. LEXIS 31931, No. 11-cv-0899, *27 (D.D.C. Feb. 28, 2019) (citing *Tennessee Gas Pipeline Co. v. F.E.R.C.*, 926 F.2d 1206, 1214 (D.C. Cir. 1991)).  It should decline to do so.

Plaintiff argues that "Defendants have had three opportunities to get it right [and] should not be afforded a fourth."  Pl.'s Mot. at 14.  Plaintiff couches this ask with a request for this Court to simply "affirm the correctness" of the Board's recommendation.  Pl.'s Mot. at 14.  However, the Board's recommendation is just that, a recommendation; it is dependent on the DASA—who is delegated the appropriate authority—to adopt the Board's recommendation.  *See*

Army Reg. 15-185, *Army Board for Correction of Military Records* (Mar. 31, 2006), ¶ 2-14(a) ("The Secretary of the Army may direct such actions as he or she deems proper on each case.  If the Secretary does not accept the [Board's] recommendation, that decision will be in writing and will include a brief statement of the grounds for denial or revision."), *available at* https://armypubs.army.mil/epubs/DR_pubs/DR_a/pdf/web/r15_185.pdf; *see also* Defs.' Mot. Summ. J. (ECF No. 9) at 6-7.  What the Plaintiff actually seeks is a mandate from this Court to award the Purple Heart to SSG Berry.

In support of this astounding ask, Plaintiff cites *Baptist Med. Ctr.* for support.  In that case, however, the court found that the agency's actions did not warrant a specific directive to the agency.  *See id.* at *27 (noting that "the Court is not convinced that the Board's actions were egregious enough").  Plaintiff also relies upon *Greyhound Corp. v. ICC*, 668 F.2d 1354 (D.C. Cir. 1981), where the D.C. Circuit concluded—under the specific circumstances of that case— there was "no just alternative but to remand the case to the [agency] with [specific] directions[.]" *Id.* at 1364-65.  Following *Greyhound*, the D.C. Circuit has noted "that application of the *Greyhound* remedy ought to be 'reserved for truly extraordinary situations,' since 'legitimate concerns about judicial overreaching always militate in favor of affording the agency just one more chance to explain its decision.'"  *Aldrich v. SEC*, 139 F.3d 221, 226 (D.C. Cir. 1998) (quoting *Tennessee Gas Pipeline Co.*, 926 F.2d at 1214).

Plaintiff also cites *Office of Communication of the United Church of Christ v. FCC*, 425 F.2d 543 (D.C. Cir. 1969), for the proposition that this Court should award the Purple Heart to SSG Berry.  In *Church of Christ*, the D.C. Circuit concluded, however, that substantial evidence did not support the agency's conclusion.  *See id.* at 550 ("We are compelled to hold, on the whole record, that the [agency's] conclusion is not supported by substantial evidence.").  In this

case, the administrative record supports the DASA's decision and does not justify a specific mandate from this Court. *See id.* (directing the agency "to invite applications to be filed for the license").

Finally, Plaintiff points to *Aldrich* where the D.C. Circuit invoked the *Greyhound* remedy. In support of that decision, the circuit noted that the proceeding had "dragged on for more than ten years" and was based on events that had occurred over 15 years ago. *See Aldrich*, 139 F.3d at 226 ("This case presents the sort of extraordinary situation for which application of *Greyhound* is reserved."). Those facts are certainly distinct from the ones at issue here. Therefore, the Court should decline Plaintiff's invitation to award the Purple Heart to SSG Berry.

## **CONCLUSION**

In sum, the DASA's decision met the standard applicable in this Court. *See Escobedo*, 602 F. Supp. 2d at 248-49 (quoting *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000)) ("Such substantial deference 'is calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its areas of competence.'"). Plaintiff disagrees with the decision but has failed to "overcome a strong presumption that the military administrators discharged their duties correctly, lawfully, and in good faith." *Id.* (citing *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997)). For the reasons set forth above, Defendants respectfully request that this Court deny Plaintiff's cross-motion for summary judgment and enter judgment in favor of Defendants.

Dated:  December 4, 2020                             Respectfully submitted,

                                                     MICHAEL R. SHERWIN
                                                     Acting United States Attorney

                                                     DANIEL F. VAN HORN, D.C. Bar # 924092

Chief, Civil Division

By: */s/ Sean P. Mahard*
SEAN P. MAHARD, CT Bar # 436524
Special Assistant United States Attorney
United States Attorney's Office
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
Phone: (202) 252-2574
sean.mahard@usdoj.gov

*Attorneys for Defendants*